**William BRODY, Plaintiff–Appellant,**

**William V. Minnich, William J. Minnich, Minic Custom Woodwork, Inc., and St. Luke's Pentecostal Church, Inc., Plaintiffs,**

v.

**VILLAGE OF PORT CHESTER, Defendant–Appellee,**

**Charles A. Gargano, in his official capacity as Chairman, President, and Chief Executive Officer of the New York Urban Development Corporation, d/b/a Empire State Development Corporation, Town of Hempstead and Town of North Hempstead Community Development Agency, Defendants.**

**No. 05–0446–CV.**

United States Court of Appeals, Second Circuit.

Argued: Sept. 19, 2005.

Decided: Dec. 5, 2005.

---

Dana Berliner, Institute for Justice, Washington, D.C. (William H. Mellor, Institute for Justice, Washington, D.C., William R. Maurer, Institute for Justice, Seattle, Washington, Martin S. Kaufman, Atlantic Legal Foundation, Inc., New York, New York, of counsel), for Plaintiff–Appellant.

Alan D. Scheinkman, DelBello Donnellan Weingarten Tartaglia Wise & Wiederkehr, LLP, White Plains, New York, for Defendant–Appellee.

Julie Loughran, Assistant Solicitor General (Eliot Spitzer, Attorney General for the State of New York, Michael S. Belohlavek, Deputy Solicitor General, of counsel), for Intervenor State of New York.

Before: WINTER, SOTOMAYOR, and WESLEY, Circuit Judges.

WESLEY, Circuit Judge.

Plaintiff-appellant William Brody has been fighting the taking of his property for the better part of seven years. In 2001, after a number of public meetings, the Village of Port Chester (the "Village") finally condemned his property for use in a large-scale municipal redevelopment project. Brody sued in the United States District Court for the Southern District of New York, alleging that the Village, acting pursuant to New York's Eminent Domain Procedure Law, N.Y. EM. DOM. PROC. LAW §§ 101–709 (McKinney 2005) ("EDPL"), violated his rights under the Due Process Clause of the Fourteenth Amendment by failing to provide adequate notice of his statutory right to challenge the Village's public use determination and adequate procedures for doing so. The district court (Baer, J.) granted summary judgment in favor of the Village, holding that the notice and hearing provisions of the EDPL, with which the Village complied, satisfied due process.

On appeal, we answer one straightforward but multifaceted question: was Brody afforded the process that was due him under the Fourteenth Amendment to the United States Constitution? After careful consideration of the facts of this case and the applicable case law, we find that (1) the means and content of the notice mandated by section 204 of the EDPL, as applied to Brody, were insufficient to satisfy due process requirements, but (2) the EDPL's procedure for reviewing a condemnor's determination passes constitutional muster.

Consequently, we vacate the district court's grant of summary judgment in favor of the Village and remand for a trial to decide whether Brody had actual notice of the EDPL proceedings or procedures and to what damages, if any, he is entitled.

# I

## A

Brody purchased commercial property in 1996 in an area of the Village that had long been slated for redevelopment. His property consisted of two separate but adjacent lots with four buildings, which he renovated and eventually leased to several local businesses. The Village, however, had plans for renewal on a much larger scale. The plan that the Village finally pursued, the Modified Marina Redevelopment Project ("Project"), was the culmination of decades of discussions on how the Village could revitalize its blighted waterfront and downtown areas. The Project was planned as a mixture of public-use space and private development, and, as is becoming increasingly common in development projects of this scope, the Village, through its Industrial Development Agency, entered into an agreement with a private development company, G & S Port Chester LLC ("G & S"), to coordinate the land acquisition and construction contracting aspects of the Project. Soon after the plans for the Project took shape, representatives of G & S approached those who owned property within the Project area with purchase offers. Many of the owners voluntarily sold their property to G & S, while a number of the property owners, including Brody, refused.

The Village initiated condemnation proceedings in June 1999. As required by section 201 of the EDPL, the Village held a public hearing on June 7, 1999, to discuss the public use, local impact, and necessity of the Project. At that time, the EDPL only required the Village to provide notice by publication.[1] *See* EDPL § 202(A). The Village nevertheless sent personal notice to Brody by certified mail in addition to publishing the notice. Brody claims he never saw either the published or mailed notice, though he does admit that he was notified of the meeting by one of his tenants.[2] He attended the June hearing and commented on the record that, although he supported the Project as a whole, he opposed the inclusion of his property.

---

1. Hereafter, all citations to the EDPL, unless otherwise noted, will be to the pre-Amendment EDPL, which was in effect when Brody's property was condemned. The EDPL was amended in 2004 to heighten various notice requirements. *See* EDPL Amendment L. 2004 c. 450 §§ 1–5 (eff. Jan. 12, 2005). In particular, section 202(C) now requires that notice of the public hearing be mailed to all property owners within the eminent domain area. The amendment to section 204 now requires that the condemnor mail a synopsis of its "Determination and Findings," which discusses, *inter alia*, the condemnor's determination of the public use of the project. *See* EDPL § 204(C). The mailing must also inform the reader that the exclusive thirty-day period for challenging the public use determination begins on the date that the synopsis is published. *See id.* Before the amendment, section 204 only required publication of the synopsis.

2. From early 1998 to March of 1999, Brody participated extensively, both personally and through counsel, in the Village's environmental impact review process. The Village highlights this as evidence that Brody was aware of the proceedings against his property. Brody's appearance at these meetings is not our concern as we need only address the narrow question of what process Brody was due under the EDPL. The significance of Brody's attendance at these meetings may be relevant, however, to the district court's inquiry on remand as to whether or not Brody had actual notice of the publication of the Determination and Findings.

The Village, having discovered a defect in the published notice for the June hearing, held a second public hearing on July 6, 1999, to discuss the same issues. Again, the Village published notice of the meeting. Brody claims that he never saw the notice, and consequently, he did not attend the July hearing. However, Brody's comments, along with the other statements made at the June hearing, were included as part of the overall record of the hearings kept by the Village.[3]

On July 18 and 19, the Village published the synopsis of its Determination and Findings, which outlined the Project's public use. The publication of the synopsis commences the exclusive thirty-day period in which an affected property owner may seek judicial review of the Village's determination. EDPL §§ 204, 207(A). Brody did not seek judicial review within the statutory period because, as he claims, he never saw the published synopsis.

On April 26, 2000, the Village began the title acquisition process by filing a verified petition with the Supreme Court in Westchester County. *See* EDPL § 402(B). In a verified answer dated May 17, 2000, Brody interposed several affirmative defenses. The answer raised issues related exclusively to compensation, as Brody's counsel correctly informed him that any arguments against public use were barred by section 208 of the EDPL. While Brody was participating in the EDPL process, he was also consulting with his current counsel who suggested that he challenge the Village's actions as, among other things, violative of Brody's federal due process rights.

**B**

On October 4, 2000, Brody, along with several other property owners in different parts of the state, filed suit in the United States District Court for the Southern District of New York, alleging that their property had been taken without notice or an opportunity for hearing in violation of the Due Process Clause of the Fourteenth Amendment. *See Minnich v. Gargano*, No. 00 Civ. 7481(HB), 2001 WL 46989 (S.D.N.Y. Jan.18, 2001) (*"Brody I"*). Plaintiffs sought a preliminary injunction barring the various defendants from further condemnation proceedings, and, on January 18, 2001, the district court granted only Brody's request for a preliminary injunction. *Id.* at *14.

The Village appealed the district court's order, and, on August 8, 2001, this Court vacated the preliminary injunction,[4] holding that Brody did not have standing to challenge the lack of notice.[5] *Brody v.*

---

3. Section 203 requires the condemnor to keep a record of the public hearing, and this record plays a key role in the EDPL's judicial review procedure. *See* EDPL §§ 203, 207(A). Any affected property owner who wishes to challenge any of the issues resolved in the Determination and Findings must do so by filing a petition for review in the Appellate Division of the Supreme Court for the judicial department in which the property is located. *Id.* The scope of review is narrow: the court will only hear challenges to the issues resolved by the condemnor's determination, and the court will only consider the evidence before the condemnor at the time the determination was made. *Id.* § 207(C).

4. With the injunction dissolved, the Village sought and received, on August 28, 2001, a formal Judgment of Condemnation awarding it title to Brody's property.

5. The court reasoned that Brody did not have standing to challenge his alleged lack of notice as to the July hearing because the comments made at the June public hearing, at which Brody appeared and spoke, were adopted as part of the overall public hearing record, and Brody had not alleged that he wished to raise additional objections at the July hearing. *Brody II*, 261 F.3d at 290. The court also determined that Brody did not have standing to challenge his alleged lack of notice of the publication of the Determination

*Vill. of Port Chester,* 261 F.3d 288, 290 (2d Cir.2001) ("*Brody II*"). The court went on to hold that, even if Brody did have standing, the district court erred when it "failed to consider the public interests involved [in proceeding with the Project] and to weigh them against Brody's alleged deprivations." *Id.*

On remand, the district court first found that Brody had remedied his lack of standing as to both the July hearing and the publication of the Determination and Findings. *Minnich v. Gargano,* No. 00 Civ. 7481(HB), 2001 WL 1111513, at *6 (S.D.N.Y. Sept.20, 2001) ("*Brody III*"). The district court granted summary judgment for the Village, however, ruling that Brody's claims were barred by *res judicata* because they could have been asserted as claims or counterclaims in the Village's condemnation proceeding. *Id.*

On appeal, this Court vacated the district court's summary judgment, noting that Brody's claims were not precluded because they could not have been raised in the Village's section 402 proceeding to take title. *Brody v. Vill. of Port Chester,* 345 F.3d 103, 113–14 (2d Cir.2003) ("*Brody IV*"). The Court also clarified the standing issue, holding that (1) Brody did not have standing to challenge the notice given for the second hearing because he never indicated that he would have raised additional objections at the second hearing, *id.* at 111; and (2) Brody did have standing to challenge the lack of personal notice of the publication of the Determination and Findings because he stated in his declaration that he wished to challenge public use but was denied the opportunity to do so as he was unaware of the commencement of the

thirty-day review period. *Id.* at 111–12.[6] The Court remanded the case once again for consideration of the merits of Brody's due process claim. *Id.* at 121.

On remand, Brody again pressed his argument that, but for the Village's failure to notify him of the publication of the Determination and Findings and the commencement of the thirty-day challenge period, he would have challenged the Village's public use determination. *Brody v. Vill. of Port Chester,* No. 00 Civ. 7481(HB), 2005 WL 13833, at *1 (S.D.N.Y. Jan.4, 2005) ("*Brody V*"). Brody also argued that the absence of an adversarial proceeding denied him a meaningful opportunity to be heard. *Id.* The Village argued in response that (1) Brody had actual notice of the publication of the synopsis, (2) the Determination and Findings are legislative in nature, and as such, Brody was not entitled to notice or an opportunity to be heard, and (3) Brody had constructive knowledge of the appeal period, and thus personal notice was unnecessary. *Id.* at *2. After a hearing, the district court again granted the Village's motion for summary judgment, ruling that (1) under *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), publication notice was sufficient to satisfy due process, (2) the published notice did not have to inform the reader of the significance of the publication (i.e., that it began the thirty-day appeal period) or of the statutory procedure for challenging the determination, and (3) the hearing provided for by EDPL section 207 satisfies due process. *Brody V* at *3–8.

and Findings (and the thirty-day challenge period) because he had not alleged a lack of actual notice. *Id.*

**6.** While Brody now claims that he wished to challenge the public use of the Project as a

whole, several of his statements—both at the public hearing and in letters to the Village—expressed approval for the Project but a desire to have his property excluded from the Project area.

Brody argues on appeal that summary judgment was improper because the notice and hearing provided by the Village were insufficient to satisfy Fourteenth Amendment due process requirements. First, Brody claims that, while he was aware that the Village was planning to take his property to complete the Project, he was unaware of the brief period of time allowed under the EDPL for seeking judicial review of the public use determination. Second, Brody argues that, even if he had seen the published Determination and Findings, the information contained in the synopsis would not have informed him of the legal consequence of the publication and thus does not satisfy due process requirements. Third, Brody claims that he was entitled to a full adversarial hearing before a neutral arbiter on the issue of public use. We take each of these contentions in turn.

## II

■ Due process requires that a deprivation of property be preceded by notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action," *Mullane*, 339 U.S. at 314, 70 S.Ct. 652, and an "opportunity for hearing appropriate to the nature of the case," *id.* at 313, 70 S.Ct. 652. Our inquiry into the adequacy of notice focuses on the reasonableness of the chosen means, not whether the affected persons actually received notice. *See Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir.1988). While the general notice requirement is a flexible one, i.e., that the means of giving notice must be "such as one desirous of actually informing the absentee might reasonably adopt to

accomplish it," *Mullane*, 339 U.S. at 315, 70 S.Ct. 652, the Supreme Court has unequivocally stated that "notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." *Schroeder v. City of New York*, 371 U.S. 208, 212–13, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962).

Takings cases raise additional constitutional concerns. The Fifth Amendment, as applied to the states through the Fourteenth Amendment, imposes two limitations on the sovereign's right to exercise eminent domain: the property taken must be for public use, and the owner must receive just compensation. U.S. CONST. amend. V ("nor shall private property be taken for public use, without just compensation"). We must decide whether, and to what extent, the public use and just compensation limitations trigger procedural due process rights for the condemnee.[7]

■ It is well settled that "due process requires that an owner whose property is taken for public use must be given a hearing in determining just compensation." *Walker v. City of Hutchinson*, 352 U.S. 112, 115, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956). Brody, however, does not challenge the notice given by the Village of the compensation proceedings. Instead, he challenges the notice given of the thirty-day period in which he could have sought review of the public use determination. *See* EDPL § 204. While it is clear that there is "a role for courts to play in reviewing a legislature's judgment of what constitutes a public use," *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 240, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984), that role

7. Our use of the term "condemnee" in this opinion refers only to fee owners such as Brody. We express *no opinion as to the due* process rights under the EDPL of those hold-

ing equitable or other property interests such as liens, servitudes, beneficial trust interests, and future interests.

"is an extremely narrow one." *Berman v. Parker*, 348 U.S. 26, 32, 75 S.Ct. 98, 99 L.Ed. 27 (1954). The issue to be decided then is whether a proceeding to challenge public use must be preceded by notice notwithstanding the limited judicial role, and if so, what means of notice will satisfy the minimum requirements of due process in the takings context.

## A

■ The district court found that, although due process rights were implicated by the condemnation of Brody's property, "the great weight of authority supports the proposition that notice by publication is sufficient." *Brody V*, at \*5. In arriving at this conclusion, the district court relied heavily on *Georgia v. City of Chattanooga*, 264 U.S. 472, 44 S.Ct. 369, 68 L.Ed. 796 (1924). The court cited *City of Chattanooga* for the well-established proposition that, because public use is a legislative determination, no notice at all need be given before a legislature passes an ordinance authorizing the exercise of eminent domain. *Brody V*, at \*4–5; *see also City of Chattanooga*, 264 U.S. at 483, 44 S.Ct. 369. In that case, the Supreme Court held that publication notice was clearly sufficient where no notice was required. *Id.*

The relevance of the holding of *City of Chattanooga* to this case, however, is questionable. Brody does not now challenge the notice of the public hearing; rather, he challenges the notice by publication of the Determination and Findings and, consequently, of the commencement of the thirty-day challenge period. In *City of Chattanooga*, the Court explicitly exempted the question this case poses:

> No complaint is made that the laws of Tennessee do not afford the state of Georgia and other owners reasonable notice and opportunity to be heard before the final determination of judicial

questions that may be involved in the condemnation proceedings—e. g., whether the state has delegated to the city the power to condemn; whether the taking is for a public purpose and the amount of the compensation.

*Id.* at 483, 44 S.Ct. 369 (internal citations omitted). Thus, while *City of Chattanooga* reinforces the principle that the decision to exercise the power of eminent domain is a legislative one, it does not, on its own, exempt the Village from the requirement that notice be given of the exclusive period in which Brody could challenge the public use determination.

## B

The Village argues that, while the adjudicative nature of a just compensation determination triggers the full panoply of due process rights, public use is essentially a legislative decision not subject to the requirements of due process. We disagree with the Village's characterization of the issue and with its conclusion that due process does not require notice of the exclusive period in which to challenge public use.

While we agree that due process rights do not attach to legislative actions, the issue here is whether such rights attach to a judicial proceeding established to allow aggrieved persons to assert a constitutionally prescribed limitation on a legislative action, i.e., the review procedure for challenging a public use determination made pursuant to the EDPL. At the outset, we must note that, despite the broad deference given to the government's decision to exercise its power of eminent domain, at bottom, "the question [what is a public use] remains a judicial one ... which [the courts] must decide in performing [their] duty of enforcing the provisions of the Federal Constitution." *City of Cincinnati v. Vester*, 281 U.S. 439, 446, 50 S.Ct. 360,

74 L.Ed. 950 (1930). The Supreme Court has long recognized this crucial, albeit limited, role that the courts play in enforcing the public use limitation. *See, e.g., Midkiff,* 467 U.S. at 240, 104 S.Ct. 2321; *Berman,* 348 U.S. at 32, 75 S.Ct. 98; *Vester,* 281 U.S. at 446–47 n. 1, 50 S.Ct. 360 (collecting cases). Thus, while the legislative decision to condemn is not reviewable, the purpose of the condemnation is. The role of the judiciary, however narrow, in setting the outer boundaries of public use is an important constitutional limitation. To say that no right to notice or a hearing attaches to the public use requirement would be to render meaningless the court's role as an arbiter of a constitutional limitation on the sovereign's power to seize private property.

### C

The Village's conclusion that the legislative nature of the public use determination renders the procedures for challenging the determination immune from the requirements of due process is contrary to the rule that, "at a minimum, ... persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." *Boddie v. Connecticut,* 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). And where a person has a right to be heard, that right "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane,* 339 U.S. at 314, 70 S.Ct. 652. Accordingly, we hold that where, as here, a condemnor provides an exclusive procedure for challenging a public use determination, it must also provide notice in accordance with the rule established by *Mullane* and its progeny.

Though the means of notice required by due process vary by circumstance and practical necessity, the Supreme Court has established a more particularized bright line rule: "Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Id.* at 318, 70 S.Ct. 652. This rule has been applied in condemnation compensation proceedings to require individualized notice by mail, *see Walker,* 352 U.S. at 115–16, 77 S.Ct. 200; *Schroeder,* 371 U.S. at 212–13, 83 S.Ct. 279; we see no reason why the rule should not apply here. While the Supreme Court has routinely recognized an exception where individual mailed notice is impracticable, *see, Schroeder,* 371 U.S. at 212, 83 S.Ct. 279 no such exception is warranted here. The Village had the names and addresses of all potential condemnees. The condemnees were not so numerous as to make individual notice impracticable. Furthermore, the EDPL now requires individual notice by mail, and, while this change does not inform our decision as to the minimum due process requirements, it does confirm that such notice is practicable under the circumstances. Accordingly, we reverse the decision of the district court and hold that the notice provided by the Village was insufficient to satisfy due process.

### III

In addition to challenging the means of providing notice, Brody challenges the content of the notice. When the Village published the synopsis of the Determination and Findings, there was no mention of the commencement of the exclusive thirty-day period, established by the EDPL, in which the property owner can challenge the Village's public use determination. Brody argues that the notice should (1) warn prop-

erty owners that the right to challenge the Village's determination will expire thirty days from the notice date and (2) give property owners instructions on the procedures that should be followed in challenging the determination. In response, the Village argues that owners are charged with knowing the laws affecting ownership of their property and that due process does not require the State to tell property owners of procedures available to appeal the taking of their property.

**A**

█ Just as with the form of notice, the content of the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane*, 339 U.S. at 314, 70 S.Ct. 652. This includes the corollary requirement that the notice "must be of such nature as reasonably to convey the required information." *Id.* (citing *Grannis v. Ordean*, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1914)). Of course, this raises the question: what is the required information? We think that the general facts and circumstances test of *Mullane* gives us the answer. *Mullane* requires as much notice as is practicable to inform a condemnee of legal proceedings against his property. 339 U.S. at 315, 70 S.Ct. 652. Accordingly, we agree with Brody that the notice sent to affected property owners must make some conspicuous mention of the commencement of the thirty-day review period to satisfy due process.

Both the Village's brief and the district court's opinion rely heavily on *North Laramie Land Co. v. Hoffman*, 268 U.S. 276, 45 S.Ct. 491, 69 L.Ed. 953 (1925), which the Village touts as establishing a general rule that citizens are charged with constructive knowledge of the law. Based on that generally applicable rule, the argument goes, mere publication of the Determination and Findings should have been sufficient notice to Brody, who should have known that publication starts the running of the thirty-day challenge period.

We think that the reasoning of *North Laramie* does not apply here. In *North Laramie*, the Supreme Court upheld a Wyoming eminent domain statute against a due process challenge where the state, in condemning land for the purpose of building a road, published its condemnation decision. *Id.* at 279, 45 S.Ct. 491. The publication triggered a thirty-day period in which a condemnee could bring both a challenge to the condemnation decision and an action for damages. *Id.* at 283–84, 45 S.Ct. 491. Writing for the Court, Justice Stone noted:

> [S]tatutes providing for taxation or condemnation of land may adopt a procedure, summary in character, and that notice of such proceedings may be indirect, provided only that the period of notice of the initiation of proceedings and the method of giving it are *reasonably adapted to the nature of the proceedings and their subject matter* and afford to the property owner reasonable opportunity at some stage of the proceedings to protect his property from an arbitrary or unjust appropriation.

*Id.* at 283, 45 S.Ct. 491 (emphasis added) (citations omitted). Underlying this decision were two broad policy considerations. First, the Court noted that people are generally charged with "knowledge of the provisions of statutes and must take note of the procedure adopted by them," and, furthermore, that "[o]wners of real estate may so order their affairs that they may be informed of tax or condemnation proceedings of which there is published notice." *Id.* Second, the *North Laramie* Court observed that, once plaintiff conceded the issue of public use, there was no due process right to be heard on the issue

of either the necessity or the expediency of the project. *Id.* at 284, 45 S.Ct. 491 (citing *Bragg v. Weaver*, 251 U.S. 57, 58, 40 S.Ct. 62, 64 L.Ed. 135 (1919) and quoting *Joslin Mfg. Co. v. City of Providence*, 262 U.S. 668, 678, 43 S.Ct. 684, 67 L.Ed. 1167 (1923)).

The "reasonably adapted" standard used by the Court in *North Laramie* appears to have been derived from the Court's earlier opinion in *Davidson v. City of New Orleans*, 96 U.S. 97, 24 L.Ed. 616 (1877). That opinion made an exhaustive inquiry into the various strands that form the complicated legal definition of "due process." Justice Miller wrote that broad constitutional principles such as due process are difficult to define and that, "after an experience of nearly a century, [the court was] still engaged in defining ... limitations imposed upon the States." *Id.* at 104. Notwithstanding the difficulty inherent in defining what due process is, the Court was able to state with clarity a case where due process would be satisfied:

> [W]henever by the laws of a State, or by State authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, whether it be for the whole State or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, *with such notice to the person, or such proceeding in regard to the property as is appropriate to the nature of the case*, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections.

*Id.* at 104–05 (emphasis added). In concurrence, Justice Bradley advocated a broader, positive definition of due process

that accords with the modern formulation. *Id.* at 107. He argued:

> [W]e are entitled, under the [F]ourteenth [A]mendment, not only to see that there is some process of law, but "due process of law," provided by the State law when a citizen is deprived of his property; and that, in judging what is "due process of law," respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or none of these: and if found to be suitable or admissible in the special case, it will be adjudged to be "due process of law;" but if found to be arbitrary, oppressive, and unjust, it may be declared to be not "due process of law." Such an examination may be made without interfering with that large discretion which every legislative power has ....

*Id.* at 107–08. The threads of the *Mullane* rule can be traced back to the formulation stated in both the majority and concurring opinions: the deprivation of an interest in property must be preceded by notice and an opportunity to be heard; the quantum of process required by the Constitution must be adapted to the situation; and if reasonable notice and opportunity for a hearing are given, due process will be satisfied, regardless of whether the property owner has actual notice of the deprivation or whether the owner takes advantage of the opportunity for a hearing.

While both the Village's brief and the district court's decision urge adherence to the holding of *North Laramie*, we believe that *Mullane* requires a different result. Although a citizen generally has a duty to keep abreast of the laws affecting that property ownership, *see North Laramie*, 268 U.S. at 283, 45 S.Ct. 491, the rule established by *Mullane* and its progeny— specifically, that the condemnor must give as much notice as one desirous of actually informing a condemnee, to the extent such

notice is practicable, *Mullane*, 339 U.S. at 315, 70 S.Ct. 652—calls into question the continued validity of what seems to be the *per se* rule of *North Laramie*. Forced to hew a rule out of this contradictory mandate, we conclude that due process requires the condemnor to give as much notice as is practicable in attempting to inform an affected property owner of a proceeding that threatens to deprive the owner of that property interest; however, beyond that, property owners are generally charged with knowledge of the laws relating to property ownership.

The EDPL establishes a short, exclusive period of time to challenge the public use determination. The additional information (i.e., that the publication also commences the thirty-day challenge period) imposes a comparatively small burden on the Village while ensuring that property owners are apprised of the limited opportunity to challenge the condemnation decision. Thus, we now hold that "reasonable notice" under these circumstances must include mention of the commencement of the thirty-day challenge period. Our conclusion rests on two observations. First, the EDPL splits the condemnation process from the proceedings to take title and to determine just compensation. It is not likely that the average landowner would have appreciated that notice of the Determination and Findings began the exclusive period in which to initiate a challenge to the condemnor's determination. Second, at the end of the thirty-day period, the condemnee has lost the right to seek review of the public use determination in state court. Given the constitutional significance of the public use requirement and the brief period allowed for reviewing the condemnor's public use determination, we believe that due process requires more explicit notice than that given to Brody.

**B**

■ As to Brody's second contention—that the notice must inform the condemnee of procedures available for challenging the condemnation—we disagree. The Supreme Court noted in *City of West Covina v. Perkins*, 525 U.S. 234, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999), that the reasoning of *Mullane* does not require "individualized notice of state-law remedies which ... are established by published, generally available state statutes and case law." *Id.* at 241, 119 S.Ct. 678.

That rule governs here. Had the Village informed Brody of the proposed condemnation and told him that he had thirty days in which to challenge the determination, it would have been incumbent upon him either to research the available state-law remedies or to seek the advice of legal counsel. Due process imposes no freestanding requirement to give a condemnee a guide for challenging the taking. While New York has since amended the EDPL to require the condemnor to provide some of this information to the condemnee, *see* EDPL § 204(C), that is done as a wise policy choice of the State and not pursuant to the demands of the Constitution. Accordingly, although we reject the district court's finding that the content of the notice was sufficient to satisfy due process, we agree with the district court that the notice is not required to inform its reader of the procedures for challenging the public use determination.[8]

**IV**

■ Finally, Brody argues that the procedures for challenging public use are in-

---

8. On remand, the district court must decide to what damages, if any, Brody is entitled. While this calculation is a matter within the district court's discretion, we stress that Bro-

dy may be entitled to nominal damages upon a showing of a denial of due process. *See Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). An award of

sufficient to satisfy due process. Section 207 of the EDPL provides for a post-determination [9] hearing that is summary in nature, restricting both the issues that can be raised and the evidence the court will consider. While Brody claims that due process requires a full adversarial hearing (complete with the right to call and cross-examine witnesses) before a neutral arbiter, it is unclear from reading his brief whether he believes that he was owed that hearing before or after the Village made its decision to condemn his property. The distinction, however, is academic: from a constitutional perspective, Brody has no constitutional right to participate in the Village's initial decision to exercise its power of eminent domain, and the post-determination review procedure set forth in EDPL § 207 is sufficient under the test articulated by *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Due process does not require New York to furnish a procedure to challenge public use beyond that which it already provides.

**A**

Several of the statements in Brody's brief suggest that he argues for a full hearing *before* the Village makes its initial condemnation decision.[10] As noted above, a court's role in determining public use is "an extremely narrow one." *Berman,* 348 U.S. at 32, 75 S.Ct. 98. Once the issue of public use is settled, "the necessity and expediency of the taking . . . are legislative questions, . . . and a hearing thereon is not essential to due process in the sense of the Fourteenth Amendment." *Bragg,* 251 U.S. at 58, 40 S.Ct. 62; *see also Joslin Mfg. Co. v. City of Providence,* 262 U.S. 668, 678, 43 S.Ct. 684, 67 L.Ed. 1167 (1923). The court has no power to alter the decisions of the legislature once the court has determined that a taking is for public use. *See Berman,* 348 U.S. at 35–36, 75 S.Ct. 98. Consequently, as to the legislative aspects of the Village's condemnation decision—that is, for all issues other than the binary decision of public use *vel non*—the legislative process is all the process that is due. *See North Laramie,* 268 U.S. at 284, 45 S.Ct. 491; *cf. Bi–Metallic Inv. Co. v. State Bd. of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 60 L.Ed. 372 (1915) (Those persons who are deprived of property by operation of a general statute "are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who

compensatory damages, however, "would be appropriate only where [Brody] could demonstrate that he had suffered some injury as a result of the denial of due process, . . . such as by showing that the outcome would have been different had process been afforded, or that he had suffered emotional distress directly from the denial of due process, rather than from the denial of the liberty or property interest." *Brody IV,* 345 F.3d at 112 (citing *Carey,* 435 U.S. at 266–67, 98 S.Ct. 1042).

9. While the opportunity for hearing provided by section 207 of the EDPL is post-determination, the hearing is still a pre-deprivation hearing because the title acquisition process is not commenced until the opportunity for section 207 review is concluded.

10. For example, Brody claims that "[t]he lack of a neutral arbiter makes the risk of erroneous deprivation even more pronounced," Appellant Br. 52, and that his opportunity to challenge the condemnation amounted to "a total of four minutes to speak at the [public] hearing." *Id.* at 47–48. While an arbiter, neutral or otherwise, does not conduct the initial public hearing, *see* EDPL § 201, Brody had the opportunity for a hearing before the Appellate Division (and potentially before the New York Court of Appeals as well.) *See* EDPL § 207(B). Thus, any claim of a lack of neutral arbiter must be in reference to the public hearing.

make the rule.").[11]

Aside from the inherent lack of logic in the claim that Brody is entitled to a hearing on the issue of public use *before* the Village makes its determination, such a rule would impose an impossible burden on the condemnor and would represent an unwarranted judicial arrogation of the legislature's power to condemn. Accordingly, to the extent that Brody claims a due process right to turn the legislative decision to condemn into a full-scale adjudication, we reject his argument.

**B**

At other points in Brody's brief, he argues for a more robust judicial review procedure than is granted under EDPL § 207. The procedures that are available are indeed limited in scope. The Appellate Division, which has exclusive jurisdiction over the review, will only consider the issues resolved by the legislative determination.[12] Furthermore, the review is limited to the record before the condemnor at the time of the determination, *see* EDPL § 207(A), and the reviewing court either confirms or rejects the condemnor's deter-

mination and findings, *see id.* at § 207(C). We believe that the review procedure provided for by the EDPL is appropriate given the narrow role that the courts play in ensuring that the condemnation is for a public use. *See Midkiff,* 467 U.S. at 242–43, 104 S.Ct. 2321; *Berman,* 348 U.S. at 32, 75 S.Ct. 98; *see also Kelo v. City of New London,* —— U.S. ——, 125 S.Ct. 2655, 2664, 162 L.Ed.2d 439 (2005) ("For more than a century, [the Supreme Court's] public use jurisprudence has widely eschewed rigid formulas and intrusive scrutiny in favor of affording legislatures broad latitude in determining what public needs justify the use of the takings power.").

■ While it is clear that "some form of hearing is required before an individual is finally deprived of a property interest," *Mathews,* 424 U.S. at 333, 96 S.Ct. 893, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). *Mathews* tells us that we need to consider three factors in assessing the sufficiency of procedures:

**11.** Increased public participation—well beyond that which is required by the Due Process Clause—was one of the reasons for the enactment of the EDPL in 1977. In approving the bill, Governor Hugh Carey wrote that the State wanted to ensure that "the public will be adequately informed through hearings of proposed projects requiring the acquisition of land." Memorandum of Gov. Hugh Carey, Bill Jacket, L. 1977, c. 839. The Commission that originally reviewed New York's various eminent domain laws and that eventually recommended the procedures memorialized in the EDPL

    recognized the charge [of EDPL opponents] that increased public participation could delay or even halt projects, but it believed that the proposed procedures of notice and hearing could forestall the increasing amount of litigation and that the narrow scope of judicial review authorized by sec-

    tion 207 would expedite development once the hearing was concluded.
    *E. Thirteenth St. Cmty. Ass'n v. N.Y. State Urban Dev. Corp.,* 84 N.Y.2d 287, 294–95, 617 N.Y.S.2d 706, 641 N.E.2d 1368 (1994) (citing 1974 Report of State Comm'n on Eminent Domain and Real Property Tax Assessment Review, Comment to EDPL 201, at 17).

**12.** "The scope of review shall be limited to whether: (1) the proceeding was in conformity with the federal and state constitutions, (2) the proposed acquisition is within the condemnor's statutory jurisdiction or authority, (3) the condemnor's determination and findings were made in accordance with procedures set forth in this article and with article eight of the environmental conservation law, and (4) a public use, benefit or purpose will be served by the proposed acquisition." EDPL § 207(C).

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through .the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. 893. *Mathews* is the test for both when a hearing is required (i.e., pre- or post-deprivation) and what kind of procedure is due a person deprived of liberty or property. The general rule is "due process requires an opportunity for a hearing before a deprivation of property takes effect." *Fuentes v. Shevin,* 407 U.S. 67, 88, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Because Brody had the opportunity for a predeprivation hearing, we apply the *Mathews* test only in considering whether or not the section 207 procedures were sufficient to satisfy due process.

The deprivation of a person's interest in private property unquestionably weighs heavily in the due process balance, *see United States v. James Daniel Good Real Prop.,* 510 U.S. 43, 54–55, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993); wisely, our Constitution restricts the manner in which a legislature may take property. Though the Supreme Court recognized early on that "the existence of [the eminent domain power] is necessary" and that "it cannot be lodged any where with so much safety as with the Legislature," *Vanhorne's Lessee v. Dorrance,* 2 U.S. (2 Dall.) 304, 311, 1 L.Ed. 391 (1795), the Court also recog-

nized that "[t]he nature, and ends of legislative power will limit the exercise of it." *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 388, 1 L.Ed. 648 (1798). That a taking of private property must be for public use is one such limitation.

The private interest affected by government action must also be considered in light of "the precise nature of the government function involved." *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); *see also Goldberg v. Kelly,* 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). While a legislature may juggle many policy considerations in deciding whether to condemn private property, judicial review of the final legislative decision to exercise the power of eminent domain focuses exclusively on whether or not the taking is for a public use. In addition to the narrow scope of judicial review, a long line of Supreme Court cases have "defined [the concept of public use] broadly, reflecting [the Court's] longstanding policy of deference to legislative judgments in this field." *Kelo,* 125 S.Ct. at 2663. The combination of those factors—the narrow scope of issues and the broad deference to the legislature—suggests that the role of the courts in enforcing the constitutional limitations on eminent domain is one of patrolling the borders. That which falls within the boundaries of acceptability is not subject to review. In light of that role, though Brody's property interest weighs heavily in the balance, the risk of erroneous deprivation and the marginal benefit of additional procedures are low.[13]

---

**13.** There are numerous procedural protections available under the EDPL: (1) the judges of the Appellate Division are neutral arbiters, *see* EDPL § 207; (2) appeal is available by leave to the New York Court of Appeals, *see id.;* (3) Brody had and took advantage of the opportunity to speak against public use at the public hearing, which became part of the record on review, *see id.* § 203; and (4) the Village was required to make and publish certain findings, which

Finally, the government clearly has a strong interest not only in completing projects necessary for public use, but in completing them in a timely and efficient manner. It is without question that a legal proceeding in which the condemnor's agents would be subject to discovery and cross-examination would be extremely burdensome on the courts and the government. *Cf. id.* at 2668 ("A constitutional rule that required postponement of the judicial approval of every condemnation until the likelihood of success of the plan had been assured would unquestionably impose a significant impediment to the successful consummation of many such plans.").

Legislative decisions to invoke the power to condemn are by their nature political accommodations of competing concerns. If Brody seeks a more detailed examination of the thought processes of those exercising the legislative prerogative, he asks us to endorse a judicial invasion into an area exclusively reserved for the legislature. The wisdom or advisability of a public project is not reasonably subject to the adversarial adjudicative process. However, whether a project employing condemnation is a public use is appropriate for judicial review. Accordingly, we find that the procedure set forth in EDPL § 207 is reasonably adapted to the scope of the judicial inquiry and thus satisfies the mandate that the opportunity to be heard be given "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).

### Conclusion

The district court's order of January 10, 2005, granting summary judgment for the Village is hereby VACATED, and the case is

also became part of the record on review,

REMANDED for further proceedings consistent with this opinion.