**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-11-0001064**
**25-JAN-2013**
**09:10 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

HOKU LELE, LLC, a Hawai'i limited liability company;
DONN EISELE, Plaintiffs-Appellants,
v.
CITY AND COUNTY OF HONOLULU,
a Hawai'i municipal corporation, Defendant-Appellee
and
DOES 1-10, Defendants

NO. CAAP-11-0001064

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 10-1-1448)

JANUARY 25, 2013

FOLEY, PRESIDING J., FUJISE AND REIFURTH, JJ.

OPINION OF THE COURT BY FOLEY, J.

Plaintiffs-Appellants Hoku Lele, LLC and Donn Eisele
(Hoku Lele) appeal from the November 25, 2011 Judgment entered in

the Circuit Court of the First Circuit[1] (circuit court) in favor of Defendant-Appellee City and County of Honolulu (City) pursuant to the October 20, 2011 "Order Granting Defendant, City and County of Honolulu's Motion to Dismiss the Complaint Filed July 2, 2010."

On appeal, Hoku Lele contends the circuit court erred in dismissing the case because Hoku Lele failed to exhaust all available administrative remedies.

## I. BACKGROUND

Hoku Lele owns real property of approximately 1.05 acres in Waimanalo in the City and County of Honolulu (Waimanalo property). There are four structures on the Waimanalo property, referred to by the City as Buildings A, B, C, and D. Buildings C and D, the subject of the underlying dispute, were two bungalows from the Hilton Hawaiian Village in Waikiki, built around 1954. In 1963, the City issued two building permits for the relocation of Buildings C and D from Waikiki to the Waimanalo property.

In 2005, Hoku Lele sought to rebuild Buildings A, B, C, and D and applied for building permits to do so. Apparently as part of the permit application process, Hoku Lele submitted a "zoning verification" request to the City's Department of Planning and Permitting (DPP) on November 2, 2005. The request sought confirmation of the Waimanalo property's legality and confirmation that the existing structures could be rebuilt. In response, Hoku Lele received a letter from the director of the DPP (director) dated November 21, 2005 stating as follows:

> Neither Building C nor Building D is a lawful dwelling unit. This is because they were constructed (relocated onto the property) contrary to the underlying zoning district regulations in effect in 1963, despite obtaining the necessary permits.

---

[1] The Honorable Rhonda A. Nishimura presided.

> To be legally established, a use must have been allowed by the zoning code at the time it was constructed. The 1.05-acre site was located in the Agricultural Subdivision in 1963, when the building (relocation) permits were issued for Buildings C and D. As noted above, the zoning code at that time stated that no dwelling unit in excess of one (1) unit per acre of/and could be built in an Agricultural Subdivision. Buildings C and D were thus not established in accordance with the zoning regulations then in effect, and the relevant building permits appear to have been issued in error. Therefore, our conclusion is that Building C and Building D were not legally established.

At the closing of the letter, the director advised Hoku Lele, "[i]f you have additional information that supports a different determination concerning the status of Buildings C and D, please provide it to us as soon as possible. Your other option would be to apply for a variance from the provisions of the Land Use Ordinance[.]" The director further described what needed to be established to receive variance approval. However, the letter made no mention of the possibility of appealing to the DPP's Zoning Board of Appeals (ZBA).

Hoku Lele then submitted additional documents to the DPP, including building permits and documents from City building inspectors stating that all structures on the Waimanalo property were "existing nonconforming." Hoku Lele argued Buildings C and D were legally established "nonconforming dwelling units," as provided under Land Use Ordinance (LUO) § 21-4.110(d) (2003) (codified as Chapter 21 of the Revised Ordinances of Honolulu (ROH) (1990)). In a letter to Hoku Lele dated December 20, 2005, the director analyzed the additional documents and concluded they had been erroneously issued. Consequently, the director refused to recognize Buildings C and D as nonconforming dwelling units. The letter again informed Hoku Lele of the option to apply for a variance and directed further contact to DPP staff, but made no mention of the possibility of an appeal to the ZBA.

Hoku Lele sent another letter to DPP staff dated February 22, 2006, attempting to persuade DPP that Buildings C

3

and D were legal nonconformities. Neither the letter itself nor DPP's response (if any) are part of the record, and the record does not indicate any further communication between Hoku Lele and DPP. It is undisputed that Hoku Lele did not file an appeal to the ZBA.

On October 18, 2007, Hoku Lele filed a complaint against the City in the circuit court, seeking declaratory relief and asserting claims of equitable estoppel, vested rights, and violation of Hoku Lele's rights to due process under the Hawai'i Constitution and the United States Constitution. In January 2008, the parties stipulated to dismiss the suit without prejudice in return for the City's agreement to reconsider its previous decision. Although Hoku Lele submitted a request for reconsideration to the DPP, DPP did not issue a decision on the request.

On July 2, 2010, Hoku Lele filed a second complaint against the City in the circuit court, again seeking declaratory judgment and asserting the same claims as in its October 18, 2007 complaint. On January 10, 2011, the City filed a motion to dismiss. Following oral argument on April 27, 2011, the circuit court granted the City's motion, concluding the circuit court lacked subject matter jurisdiction. On October 20, 2010, the circuit court entered its "Order Granting Defendant, City and County of Honolulu's Motion to Dismiss the Complaint Filed July 2, 2010" with the following conclusions of law:

> 1. The Director's response to Plaintiffs' request for zoning confirmation on November 21, 2005 was an action of the Director in the administration of the City's Zoning Ordinance.
>
> 2. The City Zoning Board of Appeals has jurisdiction over appeals from the actions of the director in the administration of the City's Zoning Ordinance.
>
> 3. Plaintiffs [sic] failure to exhaust all available administrative remedies by not filing an appeal of the Director's November 21, 2005 decision with the City's Zoning

> Board of Appeals divests the Circuit Court of any
> jurisdiction over Plaintiffs Complaint.
>
> 4. Without jurisdiction, the Court cannot take any
> action other than to dismiss the Complaint.

The circuit court entered its Judgment on November 25, 2011, from which Hoku Lele timely appealed.

## II. STANDARDS OF REVIEW

> The existence of jurisdiction is a question of law
> that we review de novo under the right/wrong standard.
> Questions regarding subject matter jurisdiction may be
> raised at any stage of a cause of action. When reviewing a
> case where the circuit court lacked subject matter
> jurisdiction, the appellate court retains jurisdiction, not
> on the merits, but for the purpose of correcting the error
> in jurisdiction. A judgment rendered by a circuit court
> without subject matter jurisdiction is void.

Lingle v. Hawaiʻi Gov't Emps. Ass'n, AFSCME, Local 152, AFL-CIO, 107 Hawaiʻi 178, 182, 111 P.3d 587, 591 (2005) (quoting Amantiad v. Odum, 90 Hawaiʻi 152, 158-59, 977 P.2d 160, 166-67 (1999)).

> A trial court's ruling on a motion to dismiss is
> reviewed de novo. The court must accept plaintiff's
> allegations as true and view them in the light most
> favorable to the plaintiff; dismissal is proper only if it
> appears beyond doubt that the plaintiff can prove no set of
> facts in support of his or her claim that would entitle him
> or her to relief.

Wong v. Cayetano, 111 Hawaiʻi 462, 476, 143 P.3d 1, 15 (2006) (internal quotation marks and citations omitted).

## III. DISCUSSION

The circuit court concluded it did not have jurisdiction over Hoku Lele's July 2, 2010 complaint because Hoku Lele was required to exhaust its administrative remedies by appealing to the ZBA first before it could properly appeal to the circuit court. Because the claims Hoku Lele asserts are originally cognizable in the circuit court, the doctrine of exhaustion of administrative remedies is inapplicable. See Pavsek v. Sandvold, 127 Hawaiʻi 390, 400 n.7, 279 P.3d 55, 65 n.7 (App. 2012).

The Revised Charter of the City and County of Honolulu (RCCCH) § 6-1516 (2001) establishes the ZBA's jurisdiction and states in relevant part:

> Section 6-1516. Zoning Board of Appeals --
>
> The zoning board of appeals shall hear and determine appeals from the actions of the director in the administration of the zoning ordinances,[2] including variances therefrom, subdivision ordinances and any rules and regulations adopted pursuant to either.

RCCCH § 6-1516. See also LUO § 21-1.40 (1999) ("Appeals from the actions of the director in the administration of the provisions of the LUO shall be to the zoning board of appeals as provided by Section 6-1516 of the charter.").

The ZBA Rules further address the scope of the ZBA's jurisdiction, stating as follows:

> §22-1 Petition. (a) Any person who is specially, personally, or adversely affected by an action of the director may appeal the director's action to the board by submitting a written petition to the board[.]
>
> §21-1 Definitions.
>
> "Action of the director" means a decision rendered on an application pursuant to the [LUO] or the Subdivision Ordinance; a decision rendered on a request for a zoning variance; a decision rendered on a petition for declaratory ruling; a decision rendered on a request for reconsideration pursuant to part 1, chapter 4, Rules of Practice and Procedure of the department of land utilization; and an enforcement order pursuant to section 8.60-2 of the [LUO].

ZBA Rules §§ 21-1, 22-1 (1998).

---

[2]     LUO § 21-1.10 (1999) states:

Sec. 21-1.10     Title.

The provisions of this chapter, inclusive of any amendments, shall be known as the [LUO] of the City and County of Honolulu. The provisions may also be referred to as the zoning ordinance and may, to the extent practicable, contain other ordinances regulating the utilization of land pursuant to Section 6-1504 of the charter.

When interpreting the RCCCH, municipal ordinances, and administrative rules, the general principles of statutory construction apply. Windward Marine Resort, Inc. v. Sullivan, 86 Hawai'i 171, 180-81, 948 P.2d 592, 601-02 (App. 1997); Paul v. Dep't of Transp., State of Hawai'i, 115 Hawai'i 416, 426, 168 P.3d 546, 556 (2007). When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself, read in the context of the entire statute and construed in a manner consistent with its purpose. Paul, 115 Hawai'i at 426, 168 P.3d at 556.

The City argues the language of the ZBA's authority is of broad import and grants the ZBA authority to review any decision by the director regarding the applicability or application of the LUO. The City also characterizes the director's November 21, 2005 and December 20, 2005 letters as decisions rendered on "an application pursuant to the [LUO]," "a petition for declaratory ruling," and "a request for reconsideration." Because the City's arguments are not supported by the LUO, case law, or the DPP's actions, however, we disagree.

"The purpose of the LUO is to regulate land use in a manner that will encourage orderly development" and to "provide reasonable development and design standards[.]" LUO § 21-1.20 (1999). The LUO contains extensive and detailed provisions addressing the processing of specific applications, particularly applications for permits and for particular land uses. The LUO dedicates an entire Article setting forth the procedures and standards for processing permit applications (Article 2) and another for certain land uses (Article 5). The other applications specifically identified in the LUO have, at minimum, one section informing applicants of what must be included in the applications, the process for reviewing applications, and the

standards by which a decision is made on the application. See, e.g., LUO § 21-3.50-3 (1999) ("[Establishment of] Agricultural cluster - Application requirements"); §§ 21-8.20-1, 8.50-3, 8.50-9, 8.50-10 (1999) (procedures and requirements for housing developments). In contrast, nothing in the RCCCH, the LUO, or the DPP's Rules of Practice and Procedure (DPP Rules) (1999) expressly addresses or even mentions the director's ability to render decisions on requests for a zoning verification. Thus, the LUO itself does not support the City's argument that Hoku Lele's zoning verification request was an "application pursuant to the [LUO]."

The City also characterizes the director's November 21, 2005 letter as a determination that Buildings C and D were not lawful "nonconforming dwelling units" pursuant to the LUO. However, in all of the cases the City cites, the director's decisions regarding nonconforming uses were made pursuant to authority expressly granted by the LUO and as an "action of the director" appealable under the ZBA Rules. For example, in Save Diamond Head Waters LLC. v. Hans Hedemann Surf, Inc., 121 Hawai'i 16, 211 P.3d 74 (2009), the director rendered a decision on a petition for a declaratory ruling, which is specifically listed as an appealable "action of the director" under ZBA Rules §§ 21-1 and 22-1. See also Colony Surf, Ltd. v. Dir. of Dep't of Planning and Permitting, 116 Hawai'i 510, 174 P.3d 349 (2007) (appeal of director's decision on petition for declaratory ruling); Korean Buddhist Dae Won Sa Temple of Hawai'i v. Concerned Citizens of Palolo, 107 Hawai'i 371, 114 P.3d 113 (2005) (appeal of director's denial of request for variance); McPherson v. Zoning Bd. of Appeals, 67 Haw. 603, 699 P.2d 26 (1985) (appeal of director's decision granting a request for variance to enlarge an existing nonconforming use); Windward Marine Resort, Inc. v. Sullivan, 86 Hawai'i 171, 948 P.2d 592

(App. 1997) (appeal of director's issuance of cease and desist order[3]).

The cases the City cites do not stand for the broad principle that all of the director's decisions regarding nonconformities are within the ZBA's jurisdiction. Moreover, nothing in the case law or the ordinances and rules indicates a "zoning verification" request is equivalent to an application to continue a nonconformity. Rather, the case law illustrates that the proper courses of director action on a nonconformity are to render decisions on petitions for a variance or a declaratory ruling or to issue enforcement orders, all of which are specific "actions of the director" appealable to the ZBA pursuant to the ZBA Rules.

---

[3]     The LUO grants the director the authority to issue cease and desist orders. LUO § 21-2.150-2 states, in pertinent part:

> **Sec. 21-2.150-2   Administrative enforcement.**
>
> [I]f the director determines that any person is violating any provision of this chapter, any rule adopted thereunder or any permit issued pursuant thereto, the director may have the person served, by mail or delivery, with a notice of violation and order pursuant to this section.
> . . . .
>
> (b)    Contents of Order.
>
>        (1)    The order may require the person to do any or all of the following:
>
>               (A)    Cease and desist from the violation;
>               . . . .
>
>        (2)    The order shall advise the person that the order shall become final 30 days after the date of its mailing or delivery. The order shall also advise that the director's action may be appealed to the [ZBA].
>
> (c)    Effect of Order-Right to Appeal. . . . The person may appeal the order to the [ZBA] as provided in Section 6-1516 of the city charter.

The ordinance applied in <u>Windward Marine Resort</u> (LUO § 21-8.6-2) stated substantially the same.

Assuming arguendo the ZBA had jurisdiction to review the director's letters, we note the procedure employed by the DPP in this case creates a substantial risk of permanently depriving Hoku Lele of its ability to seek review either at the ZBA or in court. LUO § 21-1.40 (1999)[4] and ZBA Rules §§ 22-2 and 22-7 (1998)[5] establish a mandatory, exclusive, and short thirty-day period within which a director's action can be appealed to the ZBA; once the thirty-day period has passed, the director's action becomes final and binding. Thus, Hoku Lele contends the directors' letters did not satisfy due process requirements because the letters failed to give any notice of the right to appeal or of the thirty-day period. Other jurisdictions have concluded under similar circumstances that statutory notice of the right to appeal was inadequate and that due process required

---

[4]   LUO § 21-1.40 (1999) provides:

**Sec. 21-1.40    Appeals.**

    Appeals from the actions of the director in the administration of the provisions of the LUO shall be to the zoning board of appeals as provided by Section 6-1516 of the charter. Appeals shall be filed within 30 days of the mailing or service of the director's decision.

[5]   ZBA Rules § 22-2 provides:

    §22-2 _Mandatory appeal filing deadline._ (a) A written petition appealing an action of the director must be received at the department of land utilization within 30 days of the date of mailing or personal service of the director's written decision except that in the case of an appeal relating to the administration of the subdivision ordinance, the petition must be received within 15 days after receipt of the notice of the action.

    (b) If the appeal is not timely filed, it shall be dismissed by the board upon the board's own motion or the motion of any party to the proceeding.

ZBA Rules § 22-7 provides:

    §22-7 _Waiver or suspension of rules._ The board may waive or suspend any procedure in chapter 22 for good cause, except that the mandatory appeal filing deadline and any other provisions mandated by law, shall not be waived.

the government to provide affirmative notice.[6]  In this case, the director's letters included several paragraphs explaining the variance application process but failed to mention the ZBA.  The DPP did not consider a ZBA appeal to be an option available to Hoku Lele.  The director's advice actively discouraged Hoku Lele from appealing to the ZBA by suggesting the director could take further action and could change his position regarding Hoku Lele's right to retain Buildings C and D through a determination on a variance application (which, as noted above, would have been appealable to the ZBA).

The City's attempt to characterize the director's letters as decisions "rendered on a petition for declaratory ruling" is also unavailing.  DPP Rules § 3-1 (1993) provides: "Any interested person may petition the director for a declaratory ruling as to the applicability of any statute or ordinance[.]"  On its face, the zoning verification request form provided by the DPP is clearly not a petition for a declaratory ruling and does not conform with or give notice of the requirements for a petition as stated in DPP Rules § 3-2 (1993). The purpose of a petition for declaratory ruling is to address questions regarding a *specific* provision, rule, or order, see DPP Rules § 3-2 (1993), and therefore it differs from the zoning verification request, which seeks acknowledgment of compliance with applicable statutes, ordinances, or rules.

---

[6]     See, e.g., Brody v. Village of Port Chester, 434 F.3d 121 (2d Cir. 2005) (concluding that where a condemnor provides an exclusive thirty-day period for challenging a public use determination, the notice sent to affected property owners must include a "conspicuous mention" of the challenge period); Aacen v. San Juan Cnty. Sheriff's Dep't, 944 F.2d 691 (10th Cir. 1991) (notice to judgment debtor following seizure of her truck violated due process because it failed to inform her that hearing for asserting exemptions was available); Town of Randolph v. Estate of White, 693 A.2d 694 (Vt. 1997) (town's notice of zoning violation violated due process clause by failing to inform owner of his statutory right to contest administrator's decision by filing notice with secretary of board of adjustment within 15 days).

Nor is the director's December 20, 2005 letter a decision "rendered on a request for reconsideration." Although the director's November 21, 2005 letter advised Hoku Lele it could provide additional information concerning the status of Buildings C and D, the director never clearly notified Hoku Lele of his intent to reconsider (as required by DPP Rules § 4-5 (1993)[7]), nor did he inform Hoku Lele of the specific requirements and procedures for filing a formal petition for reconsideration (provided in DPP Rules Chapter 4 (1993)). More importantly, the DPP Rules are clear that the reconsideration must be of "the director's original decision to approve or deny an application[.]" DPP Rules § 4-1 (1993). Because the zoning verification request was not an application under the LUO and was not appealable to the ZBA, the director's review of the request cannot be considered an appealable "decision rendered on a request for reconsideration."

By expanding its definition of "actions of the director," the ZBA Rules could have granted the ZBA the power to review a broader range of the director's functions, such as the director's issuance of responses to zoning verification requests. Instead, however, the ZBA Rules expressly limit its jurisdiction to deciding appeals from four specifically enumerated actions, none of which apply to the director's letters in this case. Because the ZBA lacked jurisdiction over Hoku Lele's claims, the doctrine of exhaustion of administrative remedies is

---

[7]  DPP Rules § 4-5 ("Procedure [for reconsideration]") states:

§4-5 Procedure. (a) The director shall notify the current landowner(s), the applicant of record, and persons who participated in the previous action, of his intent to reconsider a action; and shall provide them with a copy of the petition, if one has been submitted.

(b) The notice shall inform the owner, applicant and other interested persons that they have 15 days from the date of the notice to submit a written response.

inapplicable, and the circuit court erred in dismissing the case for Hoku Lele's failure to exhaust all administrative remedies.

## IV. CONCLUSION

The November 25, 2011 Judgment entered in the Circuit Court of the First Circuit is vacated and this case is remanded to the circuit court.

On the briefs:

Robert H. Thomas
(Damon Key Leong Kupchak Hastert)
for Plaintiffs-Appellants.

Brad T. Saito
Krishna K.F. Jayaram
Deputies Corporation Counsel,
City and County of Honolulu
for Defendant-Appellee.