*** FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER ***

Electronically Filed
Supreme Court
SCAP-17-0000823
13-DEC-2019
08:53 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

UNITE HERE! LOCAL 5,
Appellant-Appellant,

vs.

DEPARTMENT OF PLANNING AND PERMITTING/ZONING BOARD OF APPEALS,
CITY AND COUNTY OF HONOLULU; LYLE ISHIDA, in his official
capacity as Chairperson of the Zoning Board of Appeals,
Appellees-Appellees,

and

PACREP 2,
Intervenor-Appellee.

SCAP-17-0000823

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-17-0000823; CIV. NO. 15-1-2253)

DECEMBER 13, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY NAKAYAMA, J.

This case involves Appellee-Appellee City and County of

Honolulu Department of Planning and Permitting's (DPP) approval

of two Waikīkī Special District (WSD) permits for Intervenor-

Appellee PACREP 2 and its affiliate PACREP, to develop a condo-hotel at 2121 Kūhiō Avenue and 2139 Kūhiō Avenue.[1]

When the Director of the DPP approved PACREP's application for a WSD permit at 2121 Kūhiō Avenue (2121 Kūhiō Permit) in March 2013, he included several restrictive covenant conditions in the permit to ensure compliance with the Land Use Ordinance (LUO) should any hotel unit be converted to a residential unit. The Director placed these conditions in the 2121 Kūhiō Permit at the behest of Appellant-Appellant Unite Here! Local 5 (Local 5), a union representing hotel and restaurant employees, which had raised several concerns regarding the use of the condo-hotel. Neither PACREP nor Local 5 appealed the 2121 Kūhiō Permit.

In 2014, PACREP 2 applied for a WSD permit for the second phase of the condo-hotel project at 2139 Kūhiō Avenue. The Director approved the permit (2139 Kūhiō Permit) in July 2014, but did not include the same restrictive covenant conditions that had previously been placed in the 2121 Kūhiō Permit.

Local 5 appealed the 2139 Kūhiō Permit to the Zoning Board of Appeals (ZBA), and argued that the Director abused his discretion when he approved the 2139 Kūhiō Permit without these

---

[1] The now completed condo-hotel is managed by The Ritz-Carlton Hotel Company, L.L.C., and is known as "The Ritz-Carlton Residences, Waikiki Beach."

conditions.  In response, the DPP stated that on a request from PACREP, the Director removed the restrictive covenant conditions from that permit in September 2013, prior to the approval of the 2139 Kūhiō Permit in July 2014.

The ZBA concluded that (1) it did not have jurisdiction to address any "modification" of the 2121 Kūhiō Permit in Local 5's appeal of the 2139 Kūhiō Permit, and (2) the Director's decision to approve the 2139 Kūhiō Permit was not an abuse of discretion.  On appeal, the Circuit Court of the First Circuit (circuit court) affirmed the ZBA's decision.  Local 5 filed a secondary appeal to the Intermediate Court of Appeals (ICA), and this court granted Local 5's subsequent application for transfer.

When the Director removed certain conditions from the 2121 Kūhiō Permit, conditions that he knew Local 5 had advocated for, Local 5 should have had an opportunity to challenge the removal of those conditions from the permit.  However, Local 5 did not receive notice that the Director had removed these conditions.  Under these circumstances, we conclude that Local 5's right to due process was violated, and pursuant to Hawaiʻi Revised Statutes (HRS) § 91-14(g), we remand the Director's decision to remove these conditions from the 2121 Kūhiō Permit to the ZBA so that Local 5 may challenge this decision.

3

Finally, because the 2139 Kūhiō project is fully integrated with the 2121 Kūhiō project and the decision to approve the 2139 Kūhiō Permit rested in part on the then-existing 2121 Kūhiō Permit, we also vacate the ZBA's decision to approve the Director's approval of the 2139 Kūhiō Permit, and remand to the ZBA to decide whether the Director's decision to approve that permit without the restrictive covenant conditions was an abuse of discretion.

## I. BACKGROUND

### A. The Director Approves the 2121 Kūhiō Permit

Because of its significance as "a recognized symbol of Hawaii," the LUO designates Waikīkī as a "special district" and sets forth specific objectives and design controls "to guide carefully Waikiki's future and protect its unique Hawaiian identity." Revised Ordinances of the City and County of Honolulu (ROH) § 21-9.80 et. seq. (1999); see also Surfrider Found. v. Zoning Bd. of Appeals, 136 Hawai'i 95, 98, 358 P.3d 664, 667 (2015). Any planned development project in the Waikīkī Special District must go through a "major permit" permitting process as described in the LUO. See ROH Table 21-9(C) (2003) and § 21-2.40-2 (1999).

Pursuant to the LUO's "major permit" permitting provisions, in 2012, PACREP, a principal of PACREP 2, requested a

4

WSD (Major) permit for a thirty-seven story, 350-foot-high condo-hotel at 2121 Kūhiō Avenue in Waikīkī.

On February 11, 2013, Local 5 submitted written testimony to the DPP objecting to its consideration of PACREP's WSD permit. Therein, Local 5 contended that PACREP had not taken measures to ensure the building would be used solely for hotel accommodations and had not ensured adequate parking on the premises for guests and workers. Additionally, Local 5 argued that because the project's draft Environmental Assessment was currently being challenged, issuance of a WSD permit was premature.[2]

On March 19, 2013, the Director approved PACREP's application and issued the 2121 Kūhiō Permit. Therein, the Director noted that at the public hearing on PACREP's application, twenty-three people testified in opposition to the project. The Director also noted that a Local 5 representative "commented on the discrepancies in the number of parking spaces, job estimates, and unit types (hotel versus residence) represented in the Final [environmental assessment] and the [WSD permit] application." Pursuant to the Director's findings of

---

[2]     Local 5 had previously requested that it be "made a consulted party in the development of [the] Environmental Assessment," and raised concerns regarding PACREP's draft environmental assessment. The DPP was aware that Local 5 had challenged the draft environmental assessment.

fact and conclusions of law, the Director approved the PACREP's application for a WSD permit, "subject to [certain] conditions."

Two conditions placed restrictive covenants on the project to ensure compliance with the LUO should any of the hotel units be converted to residential units. As the Director explained,

> For purposes of establishing off-street parking (and park dedication) requirements, a declaration of restrictive covenant ("Declaration") indicating the number of units to be placed in a hotel pool should be required as a condition of approval, and should be filed prior to the issuance of any building permits.[3] Subsequent to the construction of the Project, if any hotel unit is converted to a residential unit, then one parking space must be provided for each residential unit. While this is an LUO requirement, it should also be enforced as a condition of approval through the Declaration.

The Director therefore imposed two conditions, Conditions C and G, which provided:

> C.  Prior to the issuance of any building permits:
>
> 1.  A declaration of restrictive covenant (Declaration) indicating the (dwelling and/or lodging) units to be placed in a hotel pool for the Project shall be submitted to the DPP for its review and approval. Once approved, the Declaration shall be filed at the State Bureau of Conveyances; and, a certified copy of the Declaration shall be submitted to the DPP. For each unit that is designated as a residential unit:
>
> (a)  One parking space per residential unit shall be provided; and
>
> (b)  Compliance with park dedication shall be required.
>
> . . . .

---

[3]  The Director may require fee owners to record restrictive covenants on the title to a property "[t]o record special conditions attached to a permit, variance, or zone change." DPP Rules § 8-1(a)(1) (1993).

6

G. Prior to the conversion of any hotel (dwelling and/or lodging) unit to a residential (multi-family dwelling) unit, the owner of the unit shall provide to the DPP documentation of ownership of one parking space that is compliant with all relevant Land Use Ordinance (LUO) requirements, and shall comply with any park dedication requirements.

As Local 5 argues, these conditions were important to ensuring that any conversion of units from hotel use to residential use comply with the LUO. The LUO prescribes different requirements for developments described as "multi-family dwellings" and developments described as "hotels."[4] For example, in the Waikīkī Special District, hotels are only required to provide one parking space for every four dwelling or lodging units, while multi-family dwellings require one parking space for every dwelling unit. See ROH Ch. 21 Table 21-6.3 (2003).

_____

[4] A "hotel" is defined by the LUO as

a building or group of buildings containing lodging and/or dwelling units offering transient accommodations, and a lobby, clerk's desk or counter with 24 hour clerk service, and facilities for registration and keeping of records relating to hotel guests. A hotel may also include accessory uses and services intended primarily for the convenience and benefit of the hotel's guests, such as restaurants, shops, meeting rooms, and/or recreational and entertainment facilities.

ROH § 21-10.1 (2010).

In 2010, the LUO definition of "hotel" was amended from its initial definition in 1999, which previously stated that a "'[h]otel' means a building or group of buildings containing lodging and/or dwelling units in which 50 percent or more of the units are lodging units. . . ." ROH § 21-10.1 (1999) (emphasis added).

Additionally, ROH chapter 22 article 7 requires that every developer, as a condition precedent to issuance of a building permit for a multi-family development, "shall provide land in perpetuity or dedicate land for park and playground purposes, for the joint use by the occupants of lots or units in subdivisions as well as by the public." ROH § 22-7.3(a) (1996). This park dedication requirement applies "to any conversion in use of any existing non-dwelling unit to dwelling units, and such conversion shall not be undertaken unless the provisions of this article have been met." ROH § 22-7.3(i). However, under the LUO, a "hotel" is excluded from the definition of "multi-family development." ROH § 22-7.2 (1983). Therefore, hotels need not comply with the park dedication requirements of ROH chapter 22 article 7. Conditions C and G of the 2121 Kūhiō Permit addressed the possible conversion of hotel units to multi-family dwelling units to ensure that these converted units adhered to LUO requirements.

The 2121 Kūhiō Permit also contained the following general conditions regarding any modification of the permit:

> A.  Except as may otherwise be required by these conditions of approval, the operation and development of the site shall be in conformance with the approved Project, as described herein and shown on plans and drawings attached hereto . . . and comprehensively contained in the SDP application "Waikiki Special District Permit, Major 2121 Kuhio," dated December 2012, on file at the DPP. Any modification to the Project and/or approved plans, design concept, and/or the environmental character of the Project shall be

8

subject to the prior review of and approval by the Director of the DPP. Minor modifications shall be processed in accordance with Land Use Ordinance (LUO) Section 21-2.20(k).[5] Major modifications shall require a new SDP (Major).

. . . .

L.    The Director may modify the conditions of this permit by imposing additional conditions, modifying existing conditions, or deleting conditions deemed satisfied upon a finding that circumstances related to the approved Project have significantly changed so as to warrant a modification to the conditions of approval.

While Local 5 was not copied on the Director's letter to PACREP approving the 2121 Kūhiō Permit, Local 5 was aware that the Director had approved the 2121 Kūhiō Permit with Conditions C

---

[5]    ROH § 21-2.20(k) (2010) describes the administrative procedures regarding modifications to approved permits. It provides:

(k)    (1)    Except as otherwise provided herein, the director may administratively authorize minor alterations, additions, or modifications to any approved permit required by this chapter, provided that the minor modification request:
(A)    Is reasonable, and consistent with the intent of the respective permit;
(B)    Does not significantly increase the intensity or scope of the use; and
(C)    Does not create adverse land use impacts upon the surrounding neighborhood.

(2)    Subdivision (1) does not apply to:
(A)    Zone changes; and
(B)    Council approvals pursuant to Sections 21-2.110-2 (Planned development) and 21-2.120 et seq. (Plan review uses), except to the extent that minor modifications are permitted by the express language of the council's approving resolution.

(3)    Major alterations, additions, or modifications, and other alterations, additions, or modifications excepted by subdivision (2), will be processed under the provisions for the applicable permit or approval.

and G.  Local 5 did not appeal the Director's approval of the 2121 Kūhiō Permit.

## B.    The Director Removes Conditions from the 2121 Kūhiō Permit

Some time after the Director approved the 2121 Kūhiō Permit, PACREP verbally requested that Conditions C and G, the restrictive covenant conditions, be waived.  In a letter sent to PACREP on September 6, 2013 (September 6 Letter), the Director removed the restrictive covenant conditions.  He concluded, "[b]ecause we agree that the project qualifies as a condo-hotel, submission of declarations of restrictive covenants regarding this issue will not be required."

Local 5 was not aware of the existence of the Director's September 6 Letter removing 2121 Conditions C and G until the ZBA held a contested case hearing on its appeal of the 2139 Kūhiō Permit in 2015.  Accordingly, Local 5 contends that it did not appeal the Director's "modification" to the ZBA within thirty days as required by ROH § 21-1.40 because it was not notified,[6] nor did it file a complaint for declaratory or

---

[6]    ROH § 21-1.40 (1999) provides: "Appeals from the actions of the director in the administration of the provisions of the LUO shall be to the zoning board of appeals as provided by Section 6-1516 of the charter.  Appeals shall be filed within 30 days of the mailing of service of the director's decision."

injunctive relief in the circuit court as provided by HRS § 632-1.[7]

## C.    The Director Approves the 2139 Kūhiō Permit

On April 1, 2014, PACREP 2 submitted an application for a WSD (Major) permit for a 350-foot tall, 39-story condo-hotel at 2139 Kūhiō Avenue.  In its permit application, PACREP 2 stated that the proposed tower would be connected to the previously approved development at 2121 Kūhiō Avenue, and "share common amenities, including vehicle access . . . and off-street parking, within the connected 8-story building podium."

On July 14, 2014, the Director approved PACREP 2's WSD permit application and issued the 2139 Kūhiō Permit.  In the permit, the Director noted that at the public hearing on PACREP 2's application, a Local 5 representative commented that

> there were no guarantees from the Applicant that the condo-hotel would not be converted into a multi-family dwelling or not operate as a hotel.  With the concept of condo-hotels there is no guarantee that many of the hotel employees will have job security or if there will be enough off-street parking stalls.

The Director also examined the Project's off-street parking spaces, and concluded that

> there may not be adequate off-street parking to support partial multi-family (condominium) uses provided by the

---

[7]    HRS § 632-1 (1993) is the declaratory judgment provision, which may be granted in civil cases "where an actual controversy exists between contending parties . . . and the court is satisfied also that a declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding."

11

> Project. Therefore, the permit approval should be based on the use of both the 2121 Kuhio and 2139 Kuhio developments to hotel use. In the event that use of the site, or portions of the site are changed to multi-family dwellings, then the residential (dwelling or lodging) units will have to comply with residential parking requirements.

The Director also required that in the event that any portion of the development is converted to a multi-family dwelling, "then the residential (dwelling or lodging) units will have to comply with park dedication requirements."

The Director then placed several conditions in the 2139 Kūhiō Permit. However, the conditions imposed did not include the restrictive covenant conditions regarding off-street parking stalls or park dedication that had been in the 2121 Kūhiō Permit, i.e. 2121 Conditions C and G. In other words, there was no condition that required residential or multi-family units to be placed in a hotel pool, no condition that the developer provide one parking space per residential unit, and no condition that the developer comply with park dedication requirements.

Instead, the Director imposed Condition I, which stated:

> I.  Upon issuance of a COO [Certificate of Occupancy], the Project shall institute and make available:
>
>   1.  Valet service for at least 80 percent of the total required off-street parking.
>
>   2.  All units shall receive full hospitality, housekeeping, building maintenance, and room services.
>
>   3.  A centralized mail and phone service for all units.

12

> Furthermore, these requirements shall be extended as conditions of approval to all units in the 2121 Kuhio development, authorized by SDP No. 2012-SDD-73.

Local 5 was copied on the Director's letter approving the 2139 Kūhiō Permit, and thus received notice that the Director had approved the 2139 Kūhiō Permit.

## D.   Appeal to the Zoning Board of Appeals

On August 13, 2014, Local 5 timely appealed the Director's decision to approve the 2139 Kūhiō Permit to the ZBA pursuant to ROH § 21-1.40.  Local 5 explained that its appeal was narrow in scope:

> Local 5 objects to <u>the lack of conditions reasonably necessary to insure that the project being approved as a hotel is in fact used as a hotel</u> and that the individual buyers of each unit do not convert to a multi-family dwelling without satisfying the more stringent LUO multi-family requirements, such as 1:1 parking and park dedication.  The Director imposed such conditions on the sister tower located at 2121 Kuhio - including the requirement that units be placed into the hotel rental pool and any units removed from hotel use demonstrate compliance with LUO requirements for parking and park dedication - and the failure to impose similar conditions is arbitrary, capricious and an abuse of discretion.

(Emphasis in original.)

Local 5 alleged that the Director's decision to issue the 2139 Kūhiō Permit was an abuse of discretion in two ways: that (1) 2139 Condition I was vague and ambiguous; and (2) there was no condition in the 2139 Kūhiō Permit comparable to the condition in the 2121 Kūhiō Permit which imposed parking and park dedication requirements.  Local 5 explained that in the 2121 Kūhiō Permit, the Director concluded that restrictive covenants

13

should be required as a condition of approval for purposes of establishing off-street parking and park dedication requirements. However, Local 5 argued that "[t]here is no condition in the 2139 Kuhio Permit that is comparable to Condition C of the 2121 Kuhio Permit."

Accordingly, Local 5 alleged that it was arbitrary and capricious and a manifest abuse of discretion for the Director to issue the 2139 Kūhiō Permit without the same condition that had been imposed in the 2121 Kūhiō Permit. Local 5 requested that the ZBA "[a]dd Condition C from the 2121 Kuhio Permit as a new condition to the 2139 Kuhio Permit verbatim[.]"

In response, the DPP noted that on September 6, 2013, the Director sent a letter to PACREP which removed the restrictive covenant conditions in the 2121 Kūhiō Permit, because he concluded that "the approved Project was limited to hotel units and the conditions in the Director's Decision provide[d] adequate means of preventing hotel units from being converted to multi-family dwelling use absent compliance with the [LUO]." Because the Director removed the conditions from the first permit before the second permit was approved on July 14, 2014, the DPP stated that the two WSD permits were not inconsistent.

14

1.    **Contested Case Hearings**

The ZBA held several contested case hearings on the matter.  At the hearings, Local 5 explained to the ZBA why the restrictive covenant conditions in the 2121 Kūhiō Permit needed to be included in the 2139 Kūhiō Permit.  Local 5 stated that when the Director had considered the WSD permit for the 2121 Kūhiō project, he recognized that "conditions were necessary to ensure that the buyers of the individual hotel units within this building did not use the hotel units for residential use[.]" Local 5 argued that the conditions which required any converted residential units to comply with one-to-one parking and park dedication were reasonable.  On the other hand, Local 5 contended that 2139 Condition I, which only required housekeeping services, building maintenance, centralized mail, and phone service, would not similarly ensure that individual hotel units would not be used for residential use.

Local 5 continued:

> [W]hen the director considers different projects, different facts and different situations, he can apply different conditions.  That's absolutely true.  But that's not the case in this case.  As I said, it's the same project, two phases of the same project, same property, shared amenities, shared facilities and shared ownership.  The very definition of arbitrary and capricious is to be faced with the exact same situation and do something totally different.

Local 5 also noted that the Director's decision to waive the restrictive covenant conditions in the 2121 Kūhiō

15

Permit "was done in secret without any notice to Local 5 despite Local 5 being a very active participant in the permitting process for both of these structures. . . . [M]oreover, the waiver is just ineffective as a matter of law[.]"

### a.    Sadoski's Testimony

Local 5 first called Benjamin Sadoski (Sadoski), an employee of Local 5 who followed the two development projects, to testify.  Sadoski stated that the 2121 Kūhiō project and the 2139 Kūhiō project were essentially the same project, and cited PACREP 2's Public Report for a Condominium to the Real Estate Commission (Real Estate Commission Report), which provided:

> 6.    Tower 1 Development.  Developer is an affiliate of Pacrep LLC ("Tower 1 Developer"), the developer of the adjacent [2121 Kūhiō] condominium project (the "Tower 1 Project").  Developer and Tower 1 Developer anticipate that the Project and the Tower 1 Project will be integrated, sharing the use of parking services and amenities, initially through a reciprocal easement and license agreement, and subsequently, through the merger of the Project and the Tower 1 Project (meaning both the Project and the Tower 1 Project will be treated as a single condominium project).

Sadoski further testified that Local 5 "pretty consistently raised concerns . . . that units that will be used as residential units will not - will end up creating a larger parking burden, will end up creating a larger infrastructure burden."

Sadoski stated that the Director's September 6 Letter removing conditions from the 2121 Kūhiō Permit was never sent to Local 5, and he had never seen it before PACREP 2 placed it into evidence in the current ZBA appeal of the 2139 Kūhiō Permit.  On

16

cross-examination, when asked by DPP whether Local 5 ever requested that it be provided with correspondence between the DPP and PACREP 2, Sadoski responded, "I think we requested to be made a consulted party with regards to the environmental assessment process. So to that extent, yes."

### b. Director Atta's Testimony

Local 5 then called Director George Atta (Director Atta), the Director who modified the 2121 Kūhiō Permit and approved the 2139 Kūhiō Permit, to testify. Director Atta explained that 2121 Conditions C and G were placed in the 2121 Kūhiō Permit because at that time, the DPP was unsure whether the 2121 Kūhiō tower would operate as a hotel or as a multi-family residence. After further design details emerged, Director Atta stated that PACREP verbally told him that the project "would be a hundred percent hotel." Director Atta also testified that it was also brought to his attention that there was a potential "SEC question" that might jeopardize the project's financing.[8] Director Atta believed that his communications with PACREP were "mostly verbal communications," and that he could not recall

---

[8] The "SEC question" appears to have been a concern by PACREP that the project's condo-hotel units might potentially create a securities issue. Neither the DPP nor PACREP 2 specifically explained the problem in briefing on appeal.

The ZBA concluded that the Director did not make an erroneous finding about a potential securities problem. However, on appeal, the circuit court determined that there was insufficient evidence to substantiate the potential for a securities problem and struck the ZBA's conclusion on the issue from the ZBA's order, and neither party has appealed this decision.

receiving any letter by PACREP stating that the condo-hotel would operate as "a hundred percent hotel" or that there might be an SEC issue.

From these verbal communications, Director Atta concluded that none of the units would be used as multi-family residences. Director Atta further testified that he had his staff look into the SEC issue, "and the staff concluded that there was a potential for an SEC condition." Based on that potential, Director Atta decided to waive the restrictive covenant conditions.

When asked whether he complied with 2121 Condition L when he removed the restrictive covenant conditions from the 2121 Kūhiō Permit, Director Atta responded that even if he "didn't write it in there," there was a change of condition that made it unnecessary to have a restrictive covenant requiring certain conditions if the tower was operated as a residence rather than a hotel. Director Atta believed the letter that removed the conditions was a "minor" modification, "in the sense that it's primarily a clarification." Director Atta acknowledged that the conditions that were removed were important to Local 5. On cross-examination, Director Atta stated that he "[didn't] recall [Local 5] making [a] specific request [to be provided with copies

18

of correspondence between DPP and PACREP 2] but there's a lot of letters and communications going on at that time . . . ."

## 2. ZBA Decision and Order

On October 15, 2015, the ZBA affirmed the Director's decision to approve the 2139 Kūhiō Permit. The ZBA concluded that the Director's "conditional approval of the project described in the 2139 Application as a hotel, as provided in the 2139 Permit, is not based on an erroneous finding of fact, was not arbitrary and capricious, and was not an abuse of discretion." Specifically, the ZBA made the following conclusions of law:

> 18. The primary and predominant use of the project described in the 2139 Permit and the 2139 Application is "hotel" as defined by the LUO.
>
> 19. Under the LUO, a "hotel" may include some units that are used for other than transient rentals. Such use does not automatically convert the "hotel" designation to a "multi-family dwelling" designation under the LUO if the predominant use of the building is a hotel.
>
> . . . .
>
> 21. The Director did not act arbitrarily or capriciously, and did not abuse his discretion, when he did not include in the 2139 Permit conditions similar to the restrictive covenant condition of Condition C in the 2121 Permit.
>
> . . . .
>
> 24. The Director did not act arbitrarily or capriciously, and he did not abuse his discretion, when he approved Condition I of the 2139 Permit.
>
> 25. Condition I of the 2139 Permit requires that the specified hotel amenities be made available to the units in the project.

19

> 26. Local 5 has failed to satisfy its burden of proof as required under Section 6-1516 of the Charter to justify overturning the Director's decision.

The ZBA also concluded that it did not have jurisdiction to address any modification of the 2121 Kūhiō Permit:

> 3. The ZBA does not have jurisdiction in this appeal to determine the validity of any modification or removal of conditions of the 2121 Permit.
>
> . . . .
>
> 28. The conditions placed on the 2121 Kuhio project involve a different permit and application than the 2139 Permit and the 2139 Application that are the subject of this appeal. As a result, any arguments of improper actions involving the 2121 Permit were not considered in this appeal.

## E. Appeal to the Circuit Court

Local 5 filed a notice of appeal to the circuit court on November 20, 2015.[9] On March 9, 2016, Local 5 filed an opening brief alleging four issues:

> 1. Omission of Condition C from the 2139 Permit was an abuse of discretion, arbitrary and capricious.
>
> 2. Modification of the 2121 Permit was an abuse of discretion, arbitrary, and capricious.
>
> 3. Failure to follow the Land Use Ordinances' ("LUO") procedure for the modification of the 2121 Permit violated Local 5's constitutional right to procedural due process.
>
> 4. The LUO definition of Hotel is unconstitutionally vague and ambiguous.

First, Local 5 alleged that removing 2121 Condition C was an abuse of discretion, arbitrary and capricious because

---

[9] The Honorable Rhonda A. Nishimura presided.

20

without 2121 Condition C, it would be "near impossible to enforce the off-street parking requirements of the LUO."

Second, Local 5 argued that the DPP failed to comply with the LUO's minor or major permit modification procedures when it deleted Conditions C and G from the 2121 Kūhiō Permit. Local 5 stated that, according to the LUO, the Director was required to make three specific findings if he wished to make a minor modification to a permit. (Citing ROH § 21-2.20(k)(1)[10].) Local 5 maintained that the Director made no such findings. To the contrary, Local 5 contended that the modification of the 2121 Kūhiō Permit was unreasonable, significantly increased the intensity or scope of the use, and created adverse land impacts on the surrounding neighborhood; hence the removal of the conditions were a major modification. Under the LUO's procedure for major modifications, PACREP 2 would have had to submit a new permit for approval. (Citing ROH § 21-2.20(k)(3).)

Third, Local 5 contended that because it was already an interested and participating party in the 2121 Kūhiō Permit proceedings, "the Director's modification of the conditions in the 2121 Permit without providing Local 5 with notice and a hearing to contest the modification" violated its due process rights.

---

[10]     See supra note 5.

Finally, Local 5 alleged that the LUO's definition of "hotel" is unconstitutionally vague and ambiguous, because it allowed for subjective interpretation and application. Specifically, Local 5 maintained that the ZBA erred when it found that "there is no quantum of units that must be in [hotel] use in order for the building to qualify as a hotel."

In their respective answering briefs, PACREP 2 and the DPP contested each point of error alleged by Local 5.

With respect to the modification of the 2121 Kūhiō Permit, PACREP 2 and the DPP first explained that the circuit court lacked jurisdiction to adjudicate the modification of the 2121 Kūhiō Permit. Assuming arguendo that the modification was properly before the ZBA, PACREP 2 and the DPP both argued that the Director's modification was not arbitrary and capricious. PACREP 2 contended that LUO modification procedures were inapplicable to this case, because the Director merely modified a condition of the permit, and not the actual permit itself.

Regarding Local 5's due process argument, PACREP 2 and the DPP contended that Local 5's due process rights were not violated when it did not receive notice of the Director's modification. PACREP 2 stated that a procedural due process challenge requires a claimant's alleged interest to be considered "property" within the meaning of the due process clause of the

22

Hawaiʻi Constitution.  Citing our opinion in Sandy Beach Def. Fund v. City and Cty. of Honolulu, 70 Haw. 361, 377, 773 P.2d 250, 260 (1989), PACREP 2 stated that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  The DPP concluded that Local 5 "ha[d] a marginal interest, at best, in the 2121 Kuhio Project."  Additionally, the DPP stated that interested parties must request notice of the Director's decisions, DPP Rules § 6-2, and argued that a requirement that interested parties receive automatic notice of the Director's decisions without a request would "result in a waste of resources by DPP and undermine the court's analysis in [Citizens Against Reckless Dev. v. Zoning Bd. of Appeals (CARD), 114 Hawaiʻi 184, 159 P.3d 143 (2007)]."

The circuit court held a hearing on September 23, 2016.  At the hearing, the circuit court asked DPP how Local 5 could have appealed the Director's decision to remove Conditions C and G from the 2121 Kūhiō Permit.  DPP responded that under the ICA's decision in Hoku Lele, LLC v. City and Cty. of Honolulu, 129 Hawaiʻi 164, 296 P.3d 1072 (App. 2013), Local 5 was not required to exhaust its administrative remedies, and could have filed a declaratory action in the circuit court once it discovered the

existence of the Director's September 6 Letter. The DPP stated that Local 5 "had notice for quite some time now, and they haven't moved to do that."

The DPP further stated that the Director had not relied on the removal of the conditions in the 2121 Kūhiō Permit when he issued the 2139 Kūhiō Permit without those conditions. However, the DPP also conceded that it could be assumed that the Director was aware that the conditions had been removed from the 2121 Kūhiō Permit, because he had been the one to remove them.

On rebuttal, Local 5 contended that this court's decision in CARD was distinguishable from the facts in this case, "because there, that was a conditional use permit that the plaintiff in the case participated in, and then chose not to appeal." More importantly, Local 5 continued, "Local 5 was a participant in the 2121 proceeding. It had submitted letters in opposition. It had testified at hearings, which resulted in the condition that it [sic] was satisfactory to it." Local 5 also reiterated that the Director's action in approving the 2139 Kūhiō Permit without similar conditions to 2121 Conditions C and G was arbitrary and capricious. Finally, Local 5 argued that even if the Director reserved to himself the right to later modify certain conditions in a permit, he was still required to follow

24

the LUO procedures regarding permit modification:[11] "either major permit modification, which requires a new application, or minor modification, which requires certain findings to be made."

On October 9, 2017 the circuit court entered its Findings of Fact, Conclusions of Law, and Decision and Order Modifying and Affirming the Decision of the ZBA (Circuit Court Order). Regarding the ZBA's jurisdiction over the 2121 Kūhiō Permit and its own jurisdiction over the 2121 Kūhiō Permit, the circuit court concluded:

> 2. The ZBA did not have jurisdiction over the 2121 Kuhio Permit in Case No. 2015/ZBA-5 because it was not designated as an "action of the Director" in Local 5's Petition.
>
> 3. The ZBA did not err in concluding that "[t]he ZBA does not have jurisdiction in this appeal to determine the validity of any modification or removal of conditions on the 2121 Permit."
>
> 4. This Court has appellate jurisdiction over the ZBA's Order pursuant to HRS § 91-14, which allows a person aggrieved by a final decision and order from a contested case to appeal the same to the Circuit Court.
>
> 5. The Court does not have jurisdiction over the 2121 Kuhio Permit, the modification of the 2121 Kuhio Permit, or the effects of the 2121 Kuhio Permit modification on Local 5's due process rights pursuant to HRS § 91-14, in this case.

Additionally, notwithstanding the circuit court's finding that there was no substantial evidence to indicate a "securities law issue," the circuit court concluded that the valid findings of fact and conclusions of law "amply support[ed]

---

[11]     ROH § 21-2.20(k) provides the LUO procedures for modifying an approved permit. See supra note 5.

the ZBA's decision to affirm the Director's approval of the 2139 Kuhio Permit."

Local 5 filed a notice of appeal to the ICA.  On July 27, 2018, we granted Local 5's application for transfer.

## II.  STANDARDS OF REVIEW

### A.    Secondary Appeals

> Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) to the agency's decision.

CARD, 114 Hawai'i at 193, 159 P.3d at 152.

> Pursuant to HRS § 91-14(g),

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
> (1)    In violation of constitutional or statutory provisions; or
> (2)    In excess of the statutory authority or jurisdiction of the agency; or
> (3)    Made upon unlawful procedure; or
> (4)    Affected by other error of law; or
> (5)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> (6)    Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91-14(g) (2012).

> Accordingly,

> [c]onclusions of law are reviewed de novo, pursuant to subsections (1), (2) and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact (FOF) are reviewable under the clearly erroneous

26

> standard, pursuant to subsection (5), and an agency's exercise of discretion is reviewed under the arbitrary and capricious standard, pursuant to subsection (6).

Kauai Springs, Inc. v. Planning Comm'n of Cty. of Kauaʻi, 133 Hawaiʻi 141, 164, 324 P.3d 951, 974 (2014).

Courts reviewing agency determinations for abuse of discretion must engage in a two-step inquiry.

> When determining whether an agency abused its discretion pursuant to HRS § 91-14(g)(6), the court must first "determine whether the agency determination under review was the type of agency action within the boundaries of the agency's delegated authority."  If the determination was within the agency's realm of discretion, then the court must analyze whether the agency abused that discretion.  If the determination was not within the agency's discretion, then it is not entitled to the deferential abuse of discretion standard of review.

Kolio v. Hawaiʻi Pub. Hous. Auth., 135 Hawaiʻi 267, 271, 349 P.3d 374, 378 (2015) (citing Paul's Elec. Serv., Inc. v. Befitel, 104 Hawaiʻi 412, 417, 91 P.3d at 494 (2004)).

Additionally, "it is well settled that in an appeal from a circuit court's review of an administrative decision the appellate court will utilize identical standards applied by the circuit court."  Kauai Springs, 133 Hawaiʻi at 164, 324 P.3d at 974 (internal citations and internal quotation marks omitted).

**B.   Statutory Interpretation**

"The interpretation of a statute[, ordinance, or charter] is a question of law reviewable de novo."  Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan, 87 Hawaiʻi 217, 229, 953 P.2d 1315, 1327 (1998) (alterations in original).

27

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .
> In construing an ambiguous statute, "the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1-15(1) [(1993)]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

Id. at 229-30, 953 P.2d at 1327-28 (citing Gray v. Admin. Dir. of the Court, 84 Hawaiʻi 138, 148, 931 P.2d 580, 590 (1997)).

> The general principles of construction which apply to statutes also apply to administrative rules. As in statutory construction, courts look first at an administrative rule's language. If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning.

CARD, 114 Hawaiʻi at 194, 159 P.3d at 153 (citing Allstate Ins. Co. v. Ponce, 105 Hawaiʻi 445, 454, 99 P.3d 96, 105 (2004)).

### III. DISCUSSION

On secondary appeal to this court, Local 5 reiterates the points of error it raised in the circuit court. It argues that: (1) the circuit court erred when it concluded that it lacked jurisdiction over the modification of the 2121 Kūhiō Permit; (2) the circuit court erred when it failed to decide that the modification was illegal; (3) the circuit court erred in concluding that the Director's decision to approve the 2139 Kūhiō

Permit without conditions similar to the 2121 Kūhiō Permit was not arbitrary and capricious; and (4) the definition of "hotel" as defined in the LUO is unconstitutionally vague.

In other words, Local 5 challenges two "decisions" by the Director: the Director's September 6 Letter removing certain restrictive covenant conditions from the 2121 Kūhiō Permit, and the Director's July 14, 2014 approval of the 2139 Kūhiō Permit without those conditions.

For the following reasons, we vacate and remand.

## A. Local 5 was entitled to notice of the Director's September 6 Letter removing certain conditions from the 2121 Kūhiō Permit.

Local 5 alleges that the Director's purported modification of the 2121 Kūhiō Permit was improper in two ways. First, Local 5 contends that the Director's September 6 Letter was not a proper modification under ROH § 21-2.20(k). Second, Local 5 argues that the DPP's failure to provide notice of the Director's September 6 Letter modifying the 2121 Kūhiō Permit "prejudiced Local 5's substantial rights." Because courts have the power to modify a decision or order of an administrative agency "[w]here an administrative agency, by failure to follow its rules, prejudices the substantial rights of a party before it," Local 5 requests a remedy that will allow it to properly appeal the Director's purported modification. (Citing Nakamine

29

v. Bd. of Trustees of the Emp. Ret. Sys., 65 Haw. 251, 255, 649 P.2d 1162, 1165 (1982).)

On the facts of this case, we agree with Local 5 that it was substantially prejudiced when it did not receive notice that the Director had removed two important conditions from the 2121 Kūhiō Permit. This court has consistently noted that the principle of due process

> is not a fixed concept requiring a specific procedural course in every situation. Rather, due process is flexible and calls for such procedural protections as the particular situation demands. The basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

Price v. Zoning Bd. of Appeals, 77 Hawaiʻi 168, 172, 883 P.2d 629, 633 (1994) (citations omitted).

The record indicates that the Director was well aware that Local 5 had specific concerns regarding compliance with the LUO should the units in the 2121 Kūhiō project be converted to multi-family units. After PACREP had applied for a WSD permit for the 2121 Kūhiō tower, Local 5 registered its opposition to the Director's approval. The 2121 Kūhiō Permit makes specific reference to Local 5's complaints regarding the possible impact that usage of the units for residential, rather than hotel purposes, might have on parking, employment, and housing in Waikīkī. Indeed, the Director acknowledged that he had been aware of Local 5's concerns; he knew it was an issue "that [Local

30

5 was] concerned about." Therefore, when the Director approved the 2121 Kūhiō Permit, he included restrictive covenant conditions that would ensure that any conversion of hotel units to residential units would comply with LUO requirements. Nevertheless, merely seven months after approving the 2121 Kūhiō Permit, the Director removed these hard-fought restrictive covenant conditions without any notice to Local 5.

The DPP contends it was not required to give affirmative notice to Local 5 that the Director had removed these conditions. The DPP notes that DPP Rules § 6.2 provides that "[t]he director shall mail the written decision to the applicant and, upon request, shall give notice of the decision to other interested persons." (Emphasis in original.) Because Local 5 was not the applicant and never formally requested notice of the Director's actions on the 2121 Kūhiō Permit, the DPP argues that Local 5 cannot claim that the DPP violated its due process rights. The DPP further argues that CARD, 114 Hawaiʻi 184, 159 P.3d 143, forecloses Local 5's due process argument because Local 5 did not request notice under DPP Rules § 6.2.

DPP's reliance on CARD is misplaced because CARD did not involve a denial of due process based on lack of notice, but whether a petition for declaratory ruling can be used to seek review of agency decisions after the fact. While the appellants

31

in CARD attended every public meeting discussing the applicant's application for a conditional use permit and the applicant specifically reported at the meetings that it was "going through the permitting process," the appellants failed to request notice of the decision under DPP Rules § 6.2. Id. at 187, 159 P.3d at 146. The appellants untimely appealed the Director's approval of the conditional use permit, and the ZBA dismissed the appeal. Id. at 187-88, 159 P.3d at 146-47. The appellants then sought review of the issuance of the permit by requesting declaratory rulings from the Director. Id. at 190-01, 159 P.3d at 149-50. We affirmed the Director's later refusal to issue a declaratory ruling in favor of the appellants because we concluded that "the declaratory ruling procedure may not be used as a means for review of decisions that have come before the board and been properly decided." Id. at 200, 159 P.3d at 159.

We are presented with a different situation here. Local 5 actively participated in the public hearing process for the 2121 Kūhiō Permit. While Local 5 was not formally notified by the DPP that the Director had approved the 2121 Kūhiō Permit, Local 5 was aware that the 2121 Kūhiō Permit had been approved with the conditions for which it had advocated. Having satisfied itself that the project was approved with conditions, Local 5 had

no reason to request notice of action pursuant to DPP Rules § 6.2.

The 2121 Kūhiō Permit was not modified using the normal procedures for a modification. There is no evidence in the record to suggest that PACREP, the applicant, had publicly announced or filed a written request seeking to modify the 2121 Kūhiō Permit. Cf. CARD, 114 Hawaiʻi at 187, 159 P.3d at 146 (noting that the applicant had informed the public of its plans to develop, had applied for a conditional use permit, and had publicly reported that it was "going through the permitting process"). To the contrary, the record indicates only that PACREP verbally asked the Director to remove the conditions, and the Director later obliged. There is also no evidence in the record to indicate that the September 6 Letter was available at the DPP for review by the public.

In these particular circumstances, we disagree that Local 5's failure to formally request notice under DPP Rules § 6.2 forecloses its right to challenge the Director's September 6 Letter. Where the record demonstrates that the interested party advocated for certain conditions in a permit, the permit was approved with those conditions, and the permitting authority knew the importance of the conditions to the interested party, that interested party is entitled to heightened procedural

33

protections regarding later decisions to modify that permit. See Price, 77 Hawaiʻi at 172, 883 P.2d at 633. These protections include "notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Id. In this unique circumstance, we conclude that Local 5 was entitled to these heightened due process protections.

Therefore, pursuant to HRS § 91-14(g), we remand these issues to the ZBA to decide whether the Director's September 6 Letter was a proper modification of the 2121 Kūhiō Permit under ROH § 21-2.20(k) and ZBA Rules § 22-8.[12]

---

[12] Local 5 argues that the ZBA lacks jurisdiction to address any "modification" of a permit, because it is not an "action of the Director" under ZBA Rules § 21-1. Revised Charter of the City and County of Honolulu (RCCCH) § 6-1516, however, gives broad powers to the ZBA to "hear and determine appeals from the actions of the director in the administration of the zoning ordinances[.]" Modification of permits are expressly provided in the LUO as an "administrative procedure." See ROH § 21-2.20; cf. Hoku Lele v. City and Cty. of Honolulu, 129 Hawaiʻi at 167-68, 296 P.3d at 1075-76 (concluding that a zoning verification is not an "action of the Director" because nothing in the LUO addresses it).

Accordingly, in the ordinary case, a modification of a permit made under ROH § 21-2.20(k) is an "action of the Director" as contemplated by RCCCH § 6-1516 and ROH § 21-1.40, and can be appealed to the ZBA. To the extent that ZBA Rules § 21-1 states otherwise, it contradicts the broader language and purpose of RCCCH § 6-1516. See Colony Surf. Ltd. v. Dir. of Dep't of Planning & Permitting, 116 Hawaiʻi 510, 515, 174 P.3d 349, 354 (2007).

Finally, while Local 5 requests that we determine, in the first instance, whether any such "modification" was improper, we note that no agency or court has ruled on the issue. Although there was an admitted modification, because there has been no ruling in this case, it must be remanded. It is therefore appropriate that the ZBA decide whether the Director's September 6 Letter was a proper modification of the 2121 Kūhiō Permit pursuant to ROH § 21-2.20(k) and ZBA Rules § 22-8.

**B.    The Director's subsequent approval of the 2139 Kūhiō Permit must also be remanded.**

Local 5 also contends that the circuit court erred when it affirmed the ZBA's decision to affirm the approval of the 2139 Kūhiō Permit.  Its principal argument on this point is that the circuit court's affirmance of the 2139 Kūhiō Permit without conditions similar to the 2121 Kūhiō Permit was arbitrary, capricious, and an abuse of discretion.  In other words, the issue here is whether the ZBA erred when it concluded that "[t]he Director did not act arbitrarily or capriciously, and did not abuse his discretion, when he did not include in the 2139 Permit conditions similar to the restrictive covenant condition of Condition C in the 2121 Permit."

Because the record demonstrates that the 2139 Kūhiō project is operated jointly and fully integrated with the 2121 Kūhiō project, the specific facts of this case require us to remand the approval of the 2139 Kūhiō Permit.  The record makes clear that both the 2121 Kūhiō tower and the 2139 Kūhiō tower are operated as a single condo-hotel.  In the first paragraph of its application for the 2139 Kūhiō Permit, PACREP 2 states that the proposed project "will share an 8-story building podium with the adjacent 2121 Kūhiō tower that is currently under construction. The building podium will contain shared resident services, recreational amenities, vehicle access and off-street parking."

35

The shared amenities in the building podium will include "commercial spaces, concierge desk, spa, theatre, kids' room, indoor and outdoor spaces for events, food, and beverage preparation area and a business center." Moreover, the 8-story building podium will provide vehicle access to both the 2121 Kūhiō tower and the 2139 Kūhiō tower from Kālaimoku Street.

Similarly, in PACREP 2's Real Estate Commission Report, PACREP 2 specifically stated that the two towers will be integrated, "sharing the use of parking services and amenities, initially through a reciprocal easement and license agreement and subsequently, through the merger of the [2139 Kūhiō] Project and the Tower 1 Project (meaning both the Project and the Tower 1 Project will be treated as a single condominium project)."

The Director also recognized the integrated nature of the two projects when he approved the 2139 Kūhiō Permit. He noted that the tower's eight-story podium "will be shared with the adjacent 2121 Kuhio condo-hotel, which is currently under construction." With respect to off-street parking, the Director specifically instructed that the approval of the 2139 Kūhiō Permit "should be based on the use of both the 2121 Kuhio and 2139 Kuhio developments to hotel use," because the building's podium will contain all of the jointly-developed parking lot spaces. Accordingly, 2139 Condition I provides that the valet,

36

housekeeping, building maintenance, and room service conditions "shall be extended as conditions of approval to all units in the 2121 Kuhio development[.]"

Both PACREP 2 and the DPP have acknowledged that the 2139 Kūhiō project was intended to be operated jointly with the 2121 Kūhiō project as one condo-hotel.  The DPP appears to have recognized the value of including similar conditions in each permit when it argued in the ZBA that one of the reasons why the Director's approval of the 2139 Kūhiō Permit was not arbitrary and capricious was because it contained the same conditions as the earlier-modified 2121 Kūhiō Permit.  Further, it conceded that the Director had knowledge of the September 6 Letter when he approved the 2139 Kūhiō Permit, as he was the one who issued the letter.

Because the decision to approve the 2139 Kūhiō Permit rested in part on the Director's removal of the restrictive covenant conditions from the 2121 Kūhiō Permit, which we are remanding to the ZBA to determine whether that modification was proper under the LUO, we also conclude that, pursuant to HRS § 91-14(g), the ZBA's decision to approve the Director's July 14, 2014 approval of the 2139 Kūhiō Permit must similarly be vacated and remanded to the ZBA to decide whether the Director

abused his discretion by approving the permit without those conditions.[13]

## IV. CONCLUSION

When PACREP submitted its application for a WSD permit for the 2121 Kūhiō project to the DPP, Local 5 raised concerns regarding how the condo-hotel would comply with LUO requirements if any hotel units were converted to residential units.  In response to those concerns, the Director placed restrictive covenant conditions in the 2121 Kūhiō Permit that required the condo-hotel to provide a sufficient number of parking stalls, comply with park dedication provisions, and meet other LUO requirements.  Local 5 knew that the Director had approved the project, and, satisfied with the conditions placed on the permit, did not appeal the decision.

Yet several months later, after an oral request by PACREP, the Director removed these conditions from the 2121 Kūhiō Permit without any notice to Local 5.  On the particular facts of this case, we conclude that the process for modifying the 2121 Kūhiō permit did not provide Local 5 with notice, such that

---

[13]     We therefore need not decide whether the definition of "hotel" in the LUO is unconstitutionally vague, and do not address Local 5's fourth argument on appeal.  See DW Aina Leʻa Dev. v. Bridge Aina Leʻa, LLC, 134 Hawaiʻi 187, 217, 339 P.3d 685, 715 (2014) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, . . . [this court] will decide only the latter." (second alteration in original)).

Local 5 was unable to later challenge the Director's decision to remove these conditions and violating its due process rights. Accordingly, we remand Local 5's challenge of the Director's September 6 Letter to the ZBA for further proceedings. Additionally, because the 2139 Kūhiō tower is fully integrated with the 2121 Kūhiō tower, shares certain facilities and parking stalls with the 2121 Kūhiō tower, and the permit for its development was based in part on the previously-approved 2121 Kūhiō Permit, we also vacate the ZBA's decision that approved the Director's granting of the 2139 Kūhiō Permit and remand the case to the ZBA.

We therefore vacate the circuit court's October 9, 2017 Findings of Fact, Conclusions of Law, and Decision and Order Modifying and Affirming the Decision of the Zoning Board of Appeals in Case No. 2014/ZBA-5, which affirmed the ZBA's October 15, 2015 Findings of Fact, Conclusions of Law, Decision and Order, and remand to the ZBA to resolve Local 5's challenges to (1) the Director's September 6, 2013 letter removing certain restrictive covenant conditions from the 2121 Kūhiō Permit; and (2) the Director's July 14, 2014 approval of the 2139 Kūhiō Permit without those conditions.

Gregory W. Kugle, Loren A. Seehase, and Joanna C. Zeigler for appellant-appellant

Brad T. Saito, for appellee-appellee City and County of Honolulu Department of Planning and Permitting

Terence J. O'Toole, Sharon V. Lovejoy and Maile S. Miller for Intervenor-Appellee PACREP 2 LLC

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

